JULI DENNING-BOYLES, Plaintiff v. WCES, INC., and HOWARD GEBEAUX, Defendants

No. COA94-1231

(Filed 6 August 1996)

## 1. Intentional Infliction of Mental Distress § 2 (NCI4th)— intentional infliction of emotional distress—summary judgment improper

In an action for intentional infliction of emotional distress and punitive damages, the trial court erred in entering summary

DENNING-BOYLES v. WCES, INC.

[123 N.C. App. 409 (1996)]

judgment for defendants when plaintiff offered a forecast of evidence that the editor of the newspaper for which she worked made numerous sexual comments and advances toward her; plaintiff's psychologist stated that plaintiff experienced severe, extreme, and disabling emotional distress as a result of this conduct; and the employer was given notice of the editor's behavior but took no action to stop it and thus ratified the employee's acts.

**Am Jur 2d, Damages §§ 789-797; Employment Relationship § 248; Job Discrimination §§ 964, 966, 967; Labor and Labor Relations §§ 638, 3292; Master and Servant § 440.**

**On-the-job sexual harassment as violation of state civil rights law. 18 ALR4th 328.**

**When is work environment intimidating, hostile, or offensive, so as to constitute sexual harassment in violation of Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.). 78 ALR Fed. 252.**

**Individual liability of supervisors, managers, or officers for discriminatory actions—cases postdating the Civil Rights Act of 1991. 131 ALR Fed. 221.**

2. **Pleadings § 378 (NCI4th)— amendment of complaint to add party—denial proper**

The trial court did not err in refusing to allow plaintiff to amend her complaint in order to add the individual owner of a newspaper, which had employed her, as defendant, since, if the individual had any liability toward her, she knew it prior to filing suit, and adding the individual at the time of her motion would result in a delay of trial.

**Am Jur 2d, Damages § 824; Job Discrimination § 2545; Labor and Labor Relations § 4589; Parties § 102.**

**Order with respect to motion for joinder of parties. 16 ALR2d 1023.**

**Amendment of pleading as to parties or their capacity as ground for continuance. 67 ALR2d 477.**

**Necessity of leave of court to add or drop parties by amended pleading filed before responsive pleading is served, under Federal Rules of Civil Procedure 15(a) and 21. 31 ALR Fed. 752.**

DENNING-BOYLES v. WCES, INC.

[123 N.C. App. 409 (1996)]

Appeal by plaintiff from judgment and order entered 21 July 1994 by Judge Donald L. Smith in Harnett County Superior Court. Heard in the Court of Appeals 23 August 1995.

*Brenton D. Adams for plaintiff appellant.*

*Bain & McRae, by Edgar R. Bain and Patrick H. Pope, for defendant appellee WCES, Inc.*

JOHN, Judge.

Plaintiff appeals entry of summary judgment precluding claims against her former employer, defendant WCES, Inc. (WCES), for intentional infliction of emotional distress and punitive damages. She also appeals denial of her motion to amend her complaint. We conclude that summary judgment was improvidently granted.

Pertinent facts and background information include the following: in December 1992, plaintiff left her job as advertising manager of the *Harnett County News* to take a similar position with *The Harnett Leader*, a newspaper being established at that time in Harnett County by WCES. The same month, WCES also hired defendant Howard Gebeaux (Gebeaux) as editor of the fledgling publication.

According to allegations in plaintiff's complaint, very soon after Gebeaux was hired, he "began making uninvited and unwelcomed sexual advances toward the plaintiff which increased in their frequency and intensity throughout the entire time the plaintiff was employed" by WCES. Further, although plaintiff informed William A. Johnson and Rebecca Johnson Davidson, members of the board of directors of WCES, by February 1993 that she was being sexually harassed by Gebeaux, WCES took no action to prevent further misconduct by Gebeaux. Eventually, on 4 June 1993, plaintiff resigned her position with *The Harnett Leader* due to "intolerable conditions" on the job and her employer's alleged refusal to alleviate them.

Plaintiff filed suit against Gebeaux and WCES 22 June 1993, claiming she had "suffered severe mental and emotional distress" as the result of sexual harassment by Gebeaux, and that she "ha[d] been required to seek medical attention for this problem." Plaintiff sought compensatory and punitive damages for intentional infliction of emotional distress and also treble damages for unfair and deceptive trade practices under N.C.G.S. Chapter 75.

Following answers by both defendants and a motion for summary judgment by WCES filed 14 March 1994, plaintiff moved on 4 April 1994 to amend her complaint to add William A. Johnson (Johnson), president and chairman of the board of WCES, as an additional defendant. On 21 July 1994, the trial court granted summary judgment in favor of WCES on plaintiff's claims of intentional infliction of emotional distress, punitive damages, and unfair and deceptive trade practices. The court certified its judgment for immediate appeal pursuant to N.C.R. Civ. P. 54(b), finding that "even though fewer than all claims have been adjudicated in this 'final judgment,' there is no just reason for delaying the appeal." The trial court also denied plaintiff's motion to amend her complaint. Plaintiff filed notice of appeal to this Court 21 July 1994.

---

[1] Plaintiff first contends summary judgment was improper because "plaintiff presented a forecast of evidence which raised a genuine issue of material fact concerning the liability of [WCES] for intentional infliction of emotional distress and punitive damages." Plaintiff makes no argument regarding her claim for unfair and deceptive trade practices, and it is deemed abandoned pursuant to N.C.R. App. P. 28(a).

Summary judgment is to be entered only where

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.R. Civ. P. 56(c). The burden of establishing absence of a triable issue rests with the moving party, and the facts will be viewed in a light most favorable to the non-moving party. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). "Because the forecast of evidence as to the factual basis of each [claim of intentional infliction of emotional distress] is unique, each claim must be decided on its own merits." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 490, 340 S.E.2d 116, 121, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986).

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Hogan*, 79 N.C. App. at 487-88, 340 S.E.2d at 119. It is a question of law whether the alleged conduct on the part of defendant "may be reasonably regarded as

**DENNING-BOYLES v. WCES, INC.**

[123 N.C. App. 409 (1996)]

extreme and outrageous;" however, once shown, "it is for the jury to determine . . . whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability." *Id.* at 490-91, 340 S.E.2d at 121. The conduct must "exceed[] all bounds of decency tolerated by society." *West v. King's Department Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988).

WCES makes no argument that plaintiff's evidentiary forecast was insufficient to support plaintiff's claim for intentional infliction of emotional distress against Gebeaux. Indeed, in its appellate brief WCES concedes that "[t]he only issue before the trial judge in considering defendant's motion for summary judgment" was whether the record before the court "would entitle plaintiff to recover against WCES." Although liability of Gebeaux is essential if WCES is to be held responsible under a theory of *respondeat superior*, a brief review of the record reveals an evidentiary forecast more than sufficient to take plaintiff's claims against Gebeaux to the jury.

Without setting out the crudest vulgarities contained in the record, we note it indicates that Gebeaux made repeated sexual comments to plaintiff at the newspaper office on almost a daily basis. For example, plaintiff alleges that Gebeaux "many, many times" made remarks such as "I want to screw you and watch you beg for more;" that, on a Saturday when both were working, Gebeaux

> begged the plaintiff to go home and spend the day with him . . . . He would come back and forth to the plaintiff's office saying things like: "This is the last chance for the best sex you'll ever have . . . ;"

that, on 22 April, Gebeaux asked plaintiff to "go to his house" for a sexual encounter; and that, when plaintiff consistently rejected him, he accused her of having lesbian relationships.

Other employees indicated Gebeaux asked plaintiff: "How's your sex life with Ray [plaintiff's husband]? How many times a week do you have sex?" and "Where's the best place to rent a good 'porno movie'?" Further, Gebeaux stated to plaintiff that "I'm so sexually frustrated around you, I've a 'good might' to get you fired;" that "I like married women better. Take them home; take them to bed; and let them go;" that "[w]e could all go down to the beach and have a big orgy;" and that "[i]t turns me on when you wear your hair down like that."

Further, the affidavit of plaintiff's clinical psychologist stated, *inter alia*, that plaintiff experienced "severe, extreme and disabling" emotional distress as a result of Gebeaux's conduct, and that her prognosis was "guarded at best and may be poor if she does not receive appropriate evaluation and treatment including psychotherapy."

Gebeaux's evidence, consisting in part of categorical denials and in part of depicting plaintiff as initiator of conversations connoting a sexual context and of personal contact with Gebeaux, conflicted with that presented by plaintiff. However, the acts and statements of Gebeaux outlined above, in addition to numerous others found in the record, without question constitute conduct which "may reasonably be regarded," *Hogan*, 79 N.C. App. at 491, 340 S.E.2d at 121, to "exceed[] all bounds of decency tolerated by society," *West*, 321 N.C. at 704, 365 S.E.2d at 625, thereby placing the question of his liability in the hands of the jury. *Hogan*, 79 N.C. App. at 491, 340 S.E.2d at 121.

As the evidentiary materials before the trial court reflect plaintiff met her burden of production regarding the individual liability of Gebeaux, we proceed to examine whether the trial court properly allowed the summary judgment motion of Gebeaux's employer, defendant WCES.

An employer may be held liable for the torts of an employee under the doctrine of *respondeat superior* in circumstances where: (1) the employer expressly authorizes the employee's act; (2) the tort is committed by the employee in the scope of employment and in furtherance of the employer's business; or (3) the employer ratifies the employee's tortious conduct. *Stanley v. Brooks*, 112 N.C. App. 609, 613, 436 S.E.2d 272, 274 (1993), *disc. review denied*, 335 N.C. 772, 442 S.E.2d 521 (1994). For plaintiff to have survived summary judgment as to WCES, therefore, the evidence must necessarily have tended to show that the acts of Gebeaux and the conduct of WCES "f[e]ll into one of the aforementioned categories." *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 436, 378 S.E.2d 232, 235, *disc. review allowed*, 325 N.C. 270, 384 S.E.2d 513, *cert. allowed*, 325 N.C. 704, 387 S.E.2d 55 (1989), *review dismissed as improvidently allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990). We conclude plaintiff presented a sufficient forecast of the evidence to move forward on the theory of ratification, and thus do not discuss the remaining categories.

This Court has held that:

> In order to show that the wrongful act of an employee has been ratified by his employer, it must be shown that the employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, shows an intention to ratify the act.

*Hogan*, 79 N.C. App. at 492, 340 S.E.2d at 122.

In addition,

> "[t]he jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." Such course of conduct may involve an omission to act.

*Brown*, 93 N.C. App. at 437, 378 S.E.2d at 236 (quoting *Equipment Co. v. Anders*, 265 N.C. 393, 401, 144 S.E.2d 252, 258 (1965)).

Finally, although the employer must have knowledge of all material facts relative to its employee's acts in order to effect ratification,

> [i]f the purported principal is shown to have knowledge of facts which would lead a person of ordinary prudence to investigate further, and he fails to make such investigation, his affirmance without qualification is evidence that he is willing to ratify upon the knowledge which he has.

Restatement (Second) of Agency § 91, Comment e, p. 235 (1958). *See also Equipment Co.*, 265 N.C. at 401, 144 S.E.2d at 258 ("[W]hen [principal] has such information that a person of ordinary intelligence would infer the existence of the facts in question, the triers of fact ordinarily would find that he had knowledge of such fact." (citing Restatement (Second) of Agency, § 91, Comment c, p. 232 (1958))).

Unrefuted evidence in the record indicates WCES received letters from plaintiff and Susan White, a reporter for the newspaper, in mid-February 1993 informing it that Gebeaux had been making sexual advances towards plaintiff. White included in a lengthy, detailed letter to WCES the following:

> I have heard [Gebeaux] make numerous comments to Juli, with respect to the clothes she might be wearing that day, her hair and just her overall looks, comments which I, as well as others who have heard them, believe to be stepping over the line and considered as sexual harassment.

Since I began working with Mr. Gebeaux, I immediately noticed his attraction to Juli. The attraction became even clearer after hearing him make comments to her such as "Um, you look good today," and "It turns me on when you wear your hair down like that."

Plaintiff wrote to WCES:

Monday, February 1st Howard made the comment to me "I am so sexually frustrated by you I think I am going to get you fired." This has not been the first time these remarks have been made . . . however, I do not want to be involved in ANY problems such as this. I will admit it has **greatly** affected my job performance.

(emphasis in the original).

WCES points to a second letter received from plaintiff, shortly after receipt of the first, in which she praised efforts of WCES in helping to resolve her problems with Gebeaux. Admittedly, plaintiff's evidence may fairly be characterized as containing contradictions on the question of whether any representative of WCES was explicitly informed that Gebeaux's sexual harassment of plaintiff continued after the February letter. However, plaintiff's affidavit also suggests Johnson failed to take the allegations set out in the first letter seriously. Plaintiff relates that Johnson said, upon patting her on the shoulder during a meeting soon after WCES received the first letter, "Now, Juli, this is not sexual harassment."

At the same meeting, according to plaintiff,

I told W. A. Johnson and Rebecca Johnson Davidson of some of the things Howard Gebeaux had said to me, including "It turns me on when you wear your hair down," but was interrupted by W. A. Johnson stating that was in the past and we must go on. W. A. Johnson would not allow me to continue to tell him about further acts of sexual harassment.

In addition, plaintiff maintains in her affidavit that:

In early April of 1993, W. A. Johnson saw flowers in my office . . . and asked who sent them. I replied, "Howard did. He's still up to his same old tricks."

. . . .

**DENNING-BOYLES v. WCES, INC.**

[123 N.C. App. 409 (1996)]

In late April of 1993, I met with Rebecca Davidson, tried to discuss sexual harassment by Howard Gebeaux, but she told me we would not discuss Mr. Gebeaux unless Howard Gebeaux was present.

Moreover, plaintiff asserts that on 4 June 1993, when she and four other female employees of the newspaper went to Johnson's office to protest the behavior of Gebeaux, plaintiff told Johnson three times that she could "no longer work with sexual harassment from Howard Gebeaux." Plaintiff claims that after briefly hearing from the employees, Johnson told them to return to the newspaper office to await his decision on whether Gebeaux would be fired. Johnson then called Gebeaux to his office; following a discussion with Gebeaux, Johnson went to the newspaper office where he announced to the staff that Gebeaux would be staying on as editor. Johnson informed plaintiff that WCES would like her and one other employee who had protested to remain with the paper. Plaintiff alleges she said at that point, "I will no longer stay and work with sexual and mental harassment." According to plaintiff, Johnson responded, "Gather your things and be out of the office before five o'clock."

WCES maintains it at no time received sufficient knowledge of material facts regarding Gebeaux's sexual harassment of plaintiff so as to satisfy the first element of ratification. *See Hogan*, 79 N.C. App. at 492, 340 S.E.2d at 122 ("it must be shown that the employer had knowledge of all material facts and circumstances relative to the wrongful act"). However, we believe plaintiff presented a sufficient forecast of evidence upon which a jury could find that WCES learned of facts regarding Gebeaux's sexual harassment of plaintiff which would have led a reasonable person "to investigate further," Restatement (Second) of Agency, *supra*, at p. 235, and that its failure to do so showed WCES was "willing to ratify upon the knowledge which [it had]." *Id.*

Further, a jury could find the requisite element of intent on the part of WCES to ratify Gebeaux's actions through its "words [and] conduct," *Hogan*, 79 N.C. App. at 492, 340 S.E.2d at 122, in declining to hear complaints from plaintiff or intervene on her behalf, or in retaining Gebeaux in the face of plaintiff's insistence she could "no longer work with sexual harassment from Howard Gebeaux." *See Hogan*, 79 N.C. App. at 492-93, 340 S.E.2d at 122 (whether manager's actions consisting, *inter alia*, of "retaining [harasser] in defendant's employ, [and] declining to intervene to prevent his further offensive

VASSEUR v. ST. PAUL MUTUAL INS. CO.

[123 N.C. App. 418 (1996)]

behavior toward [plaintiff]" amounted to "a course of conduct signi-fying an intention to . . . ratify [harasser's] acts is a question for the jury").

[2] Finally, we briefly examine plaintiff's contention the trial court erred by refusing to permit amendment of her complaint under N.C.R. Civ. P. 15(a) in order to add Johnson as defendant. Denial of a motion to amend ordinarily is not reviewable in the absence of a clear show-ing of abuse of discretion. *Caldwell's Well Drilling, Inc. v. Moore*, 79 N.C. App. 730, 731, 340 S.E.2d 518, 519 (1986). In the case *sub judice*, the trial court's order contained the factual findings that (1) "if William A. Johnson had any liability to the plaintiff, such fact was obvious to the plaintiff as early as February of 1993, and this action was instituted without making him a party," and (2) adding Johnson would make further discovery necessary at a point in the case where discovery was almost complete, thereby causing undue delay of the trial. We find no abuse of discretion in the court's order.

In sum, the trial court's award of summary judgment in favor of WCES on the issues of intentional infliction of emotional distress and punitive damages, *see Brown*, 93 N.C. App. at 438, 378 S.E.2d at 236-37 ("existence of an outrageous act supports submission of an issue pertaining to punitive damages to the jury"), is reversed; the order denying plaintiff's motion to amend her complaint is affirmed.

Reversed in part; affirmed in part.

Judges EAGLES and LEWIS concur.