## BROOKS v. SOUTHERN NAT'L CORP.

[131 N.C. App. 80 (1998)]

RILEY BROOKS, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PLAINTIFF V. SOUTHERN NATIONAL CORPORATION, SUCCESSOR IN INTEREST TO BB&T FINANCIAL CORPORATION, BRANCH BANKING AND TRUST COMPANY, JOHN A. ALLISON IV, ROBERT ROACH, MARK G. COLLINS AND REBECCA S. PRICE, DEFENDANTS

No. COA97-1193

(Filed 6 October 1998)

**1. Administrative Law— failure to exhaust remedies—effectiveness of remedy**

The trial court did not err by dismissing claims including fraud arising from the acquisition of a savings bank for failure to exhaust administrative remedies where plaintiff argued that the administrative remedy was not effective because the regulations regarding notice of the acquisition are constitutionally infirm. The publication and actual mailed notice required by N.C.G.S. § 54C-33(d) and the administrative code satisfy the due process standards set out in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, and, despite having actual notice, plaintiff never availed himself of any of the available administrative remedies during the two-year period prior to filing the complaint.

**2. Administrative Law— failure to exhaust administrative remedies—similar cases—adverse rulings**

The trial court did not err by dismissing claims arising from the acquisition of a savings bank for failure to exhaust administrative remedies where plaintiff argued that the Savings Institution Division of the N.C. Department of Commerce had approved every conversion/merger submitted to it and would have ruled against his position. However, the agency had the authority to hear plaintiff's challenges to the conversion/merger and plaintiff cites no case holding that an administrative remedy is inadequate or futile merely because an agency might rule against a litigant. Prior approval of other conversion/mergers did not necessarily mean that SID would have approved the merger in this case without regard to plaintiff's argument.

**3. Administrative Law— exclusivity of remedy—common law claims**

The administrative remedy was exclusive as to claims arising from administrative approval of a bank conversion and acquisition, but the trial court properly denied defendant's motion to dis-

miss common law claims which could not have been raised administratively. Plaintiff may pursue those claims in superior court.

Appeal by plaintiff from order, granting in part and denying in part defendants' motion to dismiss, entered 24 June 1997 by Judge Thomas W. Ross in Rockingham County Superior Court. Heard in the Court of Appeals 17 August 1998.

On 30 September 1993, BB&T Financial Corporation (BB&T) acquired Mutual Savings Bank of Rockingham County, SSB (Mutual Savings Bank). Plaintiff Riley Brooks was at that time a depositor in Mutual Savings Bank. Branch Banking & Trust Company (Branch Banking) is a North Carolina chartered commercial bank, wholly owned by BB&T. Southern National Corporation (Southern National), a bank holding company, merged with BB&T.

Brooks filed this action on 29 September 1995 on behalf of a class consisting of all those persons who were depositors in, or borrowers from, Mutual Savings Bank prior to its acquisition by BB&T, excluding defendants and any unnamed officers and directors of Mutual Savings Bank. At all relevant times, defendant John A. Allison, IV (Allison), was the President and Chief Executive Officer (CEO) of BB&T. Defendants Robert Roach (Roach), Mark G. Collins (Collins), and Rebecca S. Price (Price) were at all relevant times officers of Mutual Savings Bank.

Plaintiff alleged that as part of its strategy to acquire healthy savings and loan institutions, BB&T met with the officers and directors of Mutual Savings Bank and conspired to obtain the assets of Mutual Savings Bank at a bargain price in exchange for personal benefits and economic gains by the officers of Mutual Savings Bank. Plaintiff further alleged that: as part of the acquisition process, Mutual Savings Bank became a state savings bank chartered under North Carolina law in 1992; in 1993, the officers and directors of Mutual Savings Bank submitted a plan for conversion/merger to the Savings Institution Division (SID) and recommended approval of the plan by the depositors and borrowers; the ownership equity of Mutual Savings Bank was more than $13 million in 1993, but the recommended sale price was only $7 million; and on 30 September 1993, BB&T acquired Mutual Savings Bank on terms detrimental to plaintiff and other members of his class.

BROOKS v. SOUTHERN NAT'L CORP.

[131 N.C. App. 80 (1998)]

The class action instituted by plaintiff sought compensatory and punitive damages from defendants for the following claims: (1) breach of fiduciary duty/constructive fraud; (2) common law fraud; (3) aiding & abetting; (4) negligent misrepresentation; (5) unfair and deceptive trade practices; (6) civil conspiracy; (7) Chapter 54B and 54C violations; (8) unjust enrichment/constructive trust; and (9) punitive damages. Defendants moved to dismiss the action in its entirety pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and (6) (1990), on grounds that plaintiff had not exhausted the available administrative and judicial remedies, and further, that each claim in the complaint fails to state a claim upon which relief might be granted.

On 24 June 1997, the trial court granted the motion in part, dismissing plaintiff's fifth, seventh, and eighth claims for relief. The trial court also dismissed the first cause of action, insofar as it was based on a breach of fiduciary duty arising by reason of an alleged violation of any duty imposed by any North Carolina statute or any regulations of the Administrator. The trial court's order certified the case for immediate appeal.

*Smith, Follin & James, L.L.P., by Norman B. Smith, J. David James, and Margaret Rowlett; and Baker & Boyan, P.L.L.C., by Walter W. Baker, Jr., for plaintiff appellant.*

*Arnold & Porter, by Alexander E. Bennett; and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Reid L. Phillips, for defendant appellees.*

HORTON, Judge.

Defendants originally complained that this matter was not properly before us for decision since none of plaintiff's claims have been finally determined, but withdrew their objection prior to oral argument in light of the decision of our Supreme Court in *DKH Corp. v. Rankin-Patterson Oil Co., Inc.*, 348 N.C. 583, 500 S.E.2d 666 (1998).

Plaintiff does not contend he actually exhausted any available administrative remedies. He alleges in his complaint that the merger/conversion plan for Mutual Savings Bank was approved by SID, and that N.C. Gen. Stat. § 150B-38 (1995), *et seq.*, "provid[ed] for the possible review of the appropriateness and legality of the . . . actions of the SID in approving the . . . merger/conversion." Plaintiff argues, however, that: (I) no adequate administrative remedy was available to him under either Chapter 150B (1995), the statutes estab-

lishing SID, or SID's own regulations; (II) it would have been futile to pursue available administrative remedies because SID always approved every conversion/merger request; and (III) he was not required to exhaust administrative remedies because the provisions of N.C. Gen. Stat. §§ 54B (1992) or 54C (1991) do not provide an exclusive remedy.

I

**[1]** It is well settled that a plaintiff must exhaust the administrative process, where that process is "exclusive" and "effective," or risk having his claim barred. *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). "[A]s a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Id.* at 721-22, 260 S.E.2d at 615. However, plaintiff argues, among other things, that the administrative remedy in this case is not effective because the regulations with regards to notice are constitutionally infirm.

Decisions of SID are reviewable under the express provisions of the North Carolina Administrative Procedures Act. N.C. Gen. Stat. § 150B-38(a)(2) (1995) provides that the provisions of Article 3A apply to "the Savings Institutions Division of the Department of Commerce . . . ." Article 3A then sets out requirements of notice and an opportunity to be heard, and requires that each affected agency adopt rules consistent with the statutory provisions for the conducting of hearings. SID has done so. *See* N.C. Admin. Code, tit. 4, 16G.0400, *et seq.* The Administrative Code sets out an initial informal administrative process (N.C. Admin. Code, tit. 4, 16G.0405(a) and 16A.0402), followed by an administrative hearing if the matter cannot be resolved informally (N.C. Gen. Stat. § 150B-38), and finally, for judicial review in the Wake County Superior Court pursuant to N.C. Gen. Stat. § 150B-43 (1995).

Defendant contends plaintiff's argument concerning notice fails at the outset because plaintiff does not have a property interest which entitles him to due process protections. Several decisions of our Fourth Circuit hold that "ownership interests in the mutual association do not rise to the level of a protected property interest." *York v. Federal Home Loan Bank Board*, 624 F.2d 495, 500 (4th Cir.), *cert. denied*, 449 U.S. 1043, 66 L. Ed. 2d 504 (1980); *see also Society for Savings v. Bowers*, 349 U.S. 143, 99 L. Ed. 950 (1955). We will assume, however, for the purposes of argument that plaintiff has standing to

question whether the notice provisions set out in SID's regulations pass constitutional muster.

There were three separate levels of notice in this matter. First, after Mutual Savings Bank adopted a Plan of Conversion and entered into an Agreement and Plan of Reorganization with BB&T on 26 February 1993, there was a public announcement of those events. In addition, copies of the Plan of Conversion were made available to all interested parties at the offices of Mutual Savings Bank. Further, pursuant to SID's regulations, a notice was published in *The Reidsville Review* on 18 March 1993, and in the *Eden Daily News* on 19 March 1993. The notice informed members of Mutual Savings Bank of their right to file objections to the proposed conversion or written comments with SID within 10 days after publication.

Second, after the conversion application was filed with the Administrator and deemed to be substantially complete, Mutual Savings Bank published a notice to that effect in the *Eden Daily News* on 26 July 1993. The notice, which was also posted in Mutual Savings Bank's offices, advised members that: (A) written comments on the application, including objections and supporting materials, would be considered by the Administrator if filed with him in 10 business days; (B) failure to make such comments or objections might preclude administrative or judicial remedies; and (C) the proposed conversion plan and any written comments thereon would be available for inspection in the office of the Administrator. This notice complied fully with the requirements of N.C. Admin. Code, tit. 4, 16G.0405(a).

Third, on 11 August 1993, each member of Mutual Savings Bank was mailed a Prospectus/Proxy Statement, which advised members that the Administrator had made a preliminary approval of the proposed conversion/merger, and advised the members that the Administrator was required to find, prior to final approval, that the transaction was fair to members and that no person would receive an inequitable gain as a result of the transaction.

Plaintiff does not deny that he received a copy of the required mailing. He did not communicate with the Administrator, file any comments, or make any objection to the proposed conversion plan. The plan was approved by vote of the members of Mutual Savings Bank and finally approved by the Administrator on 29 October 1993. Nor did plaintiff submit any petition for a contested case to the superior court within 30 days of the final approval by the Administrator.

**BROOKS v. SOUTHERN NAT'L CORP.**

[131 N.C. App. 80 (1998)]

We hold that the publication and actual mailed notice which were required by both Chapter 54C (N.C. Gen. Stat. § 54C-33(d)) and the Administrative Code (N.C. Admin. Code, tit. 4, 16G.0510 and 16G.0511) satisfy due process standards set out by the United States Supreme Court in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 489-90, 99 L. Ed. 2d 565, 572 (1988) (notice by mail required to known holders of protected property interest). Despite having actual notice of the anticipated conversion of Mutual Savings Bank, plaintiff never availed himself of any of the available administrative remedies during the two-year period prior to filing the complaint in the instant case.

## II.

[2] Nor may plaintiff excuse himself for failing to exhaust his administrative remedies by arguing that SID would have ruled against his position. Plaintiff does not cite any authority in support of that argument, but does cite several cases in which the administrative remedy was found to be inadequate because the agency in question did not have the power to grant the relief sought.

In *Stocks v. Thompson*, 1 N.C. App. 201, 207, 161 S.E.2d 149, 154-55 (1968), an administrative remedy was inadequate because the agency did not have the power to hear objections to the entire tax list, but individual taxpayers were required to exhaust their "clearly defined and entirely adequate" remedies. In *Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina*, 108 N.C. App. 357, 365, 424 S.E.2d 420, 423 (1993), plaintiffs were not required to exhaust administrative remedies where the agency did not have the authority to rule on plaintiff's constitutional challenge.

However, in the instant case, the agency had the authority to hear plaintiff's challenges to the approval of the conversion/merger of Mutual Savings Bank. Plaintiff cites no case holding that an administrative remedy is inadequate or futile merely because an agency might rule against a litigant. Plaintiff argues, however, that prior to the Mutual Savings Bank conversion/merger, SID had approved every conversion/merger submitted to it. We cannot determine from the record or briefs whether any of those transactions were approved in the face of proper objections by affected parties. Merely because SID might have previously approved other conversion/mergers does not necessarily mean that SID would have approved the merger in this case without regard to plaintiff's arguments and objections. Plaintiff's argument is clearly speculative and is thus overruled.

## III.

[3] Plaintiff next argues the administrative remedy provided in N.C. Gen. Stat. § 150B is not an "exclusive" remedy. In support of that position, he cites N.C. Gen. Stat. § 54C-78(d) (1991 and Cum. Supp. 1997), which states: "Nothing in this section shall prevent anyone damaged by a director, officer or employee of a State savings bank from bringing a separate cause of action in a court of competent jurisdiction." We disagree with plaintiff's position. As we pointed out above, N.C. Gen. Stat. § 150B-38(a) specifically provides that the provisions of Article 3A of the Administrative Procedures Act apply to SID.

> As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts. This is especially true where a statute establishes, as here, a procedure whereby matters of regulation and control are first addressed by commissions or agencies particularly qualified for the purpose. In such a case, the legislature has expressed an intention to give the administrative entity most concerned with a particular matter the first chance to discover and rectify error. Only after the appropriate agency has developed its own record and factual background upon which its decision must rest should the courts be available to review the sufficiency of its process.

*Presnell v. Pell*, 298 N.C. 715, 721-22, 260 S.E.2d 611, 615 (1979) (citations omitted).

Insofar as plaintiff's claims in the instant case are grounded in the approval of the conversion/merger by the Administrator, plaintiff had an effective administrative remedy and the right to seek judicial review of the Administrator's decision. Plaintiff waived that remedy through his inaction, and the trial court properly dismissed those claims which could have been raised in the administrative review process. As to those claims, the administrative remedy was exclusive. However, as to certain common law claims which could not have been effectively raised before the Administrator, such as the alleged fraudulent misrepresentations in the prospectus/proxy statement, the trial court properly denied defendants' motion to dismiss. As plaintiff states in his brief, administrative review would have been a "useless and futile act because the facts, circumstances and legal theories which are a basis of this action were not required to be, nor were they

considered by the SID when it approved the merger/conversion . . . ."
Plaintiff may now pursue those claims in superior court.

In summary, we conclude the administrative remedies available
to plaintiff were adequate, exclusive, and complied with due process
considerations. Plaintiff took no action to protect his rights and
allowed almost two full years to pass before instituting this action.
We note that during that time, the conversion/merger transaction was
completed and the parties began to act in reliance on its completion.
The trial judge correctly analyzed plaintiff's multiple claims for relief,
and dismissed those which had, by their very nature, been part and
parcel of the Administrator's decision.

Since we find the claims in question were properly dismissed
because of plaintiff's failure to exhaust his administrative remedies,
we need not reach the other assignments of error relating to whether
the dismissed claims stated a cause of action.

Affirmed.

Chief Judge EAGLES and Judge MARTIN, Mark D., concur.