LINDA GUTHRIE, Plaintiff v. RAYMOND CONROY and CLEGG'S TERMITE AND PEST CONTROL, INC., Defendants

No. COA01-740

(Filed 6 August 2002)

**1. Appeal and Error— partial summary judgment—certification—phrase "final judgment"—not necessary**

Plaintiff's claims were subject to dismissal (but were heard in the discretion of the Court of Appeals) where plaintiff appealed more than 30 days from entry of a partial summary judgment for defendants. Although plaintiff's notice of appeal was within 30 days of an amendment that added "final judgment" to the order, whether an order is final is determined by the resolution of the claim rather than the phrase "final judgment."

**2. Emotional Distress— intentional inflection—sexual harassment—behavior juvenile but not extreme**

The trial court did not err by granting summary judgment for defendants on a claim for intentional infliction of emotional distress (IIED) involving alleged workplace sexual harassment where the alleged behavior was annoyingly juvenile, obnoxious, and offensive, but not outrageous and extreme.

**3. Emotional Distress— negligent inflection—sexual harassment by co-worker—no breach of duty**

The trial court did not err by granting summary judgment for defendants on plaintiff's claim for negligent infliction of emotional distress (NIED) arising from alleged workplace sexual harassment where plaintiff did not allege a duty owed to her by the co-employee who was allegedly harassing her. While NIED does not require extreme and outrageous conduct, negligence involves the breach of a duty.

GUTHRIE v. CONROY

[152 N.C. App. 15 (2002)]

**4. Employer and Employee— negligent retention and supervision—underlying tort**

The trial court did not err by granting summary judgment for defendant employer on a claim for negligent retention and supervision of an employee accused of sexually harassing plaintiff where there was no viable tort claim against the employee.

**5. Employer and Employee— civil assault—sexual harassment—ratification**

The trial court erred in a sexual harassment action by granting summary judgment for the employer on a claim for civil assault where the evidence was sufficient to create a genuine issue of material fact regarding ratification.

Appeal by plaintiff from order entered 14 March 2001 by Judge Steve A. Balog in Orange County Superior Court. Heard in the Court of Appeals 17 April 2002.

*Patterson, Harkavy, & Lawrence, L.L.P., by Martha A. Geer, and Davis, Murrelle & Lyles, by Edward L. Murrelle, for plaintiff-appellant.*

*Kathryn P. Fagan, for defendant-appellants.*

BIGGS, Judge.

Plaintiff (Linda Guthrie) appeals from a summary judgment order entered 14 March 2001 in favor of defendants (Raymond Conroy and Clegg's Termite and Pest Control, Inc.). For the reasons that follow, we affirm in part and reverse in part.

Plaintiff was employed in 1998 by defendant Clegg's Termite and Pest, Inc. (Clegg's), as a secretary. Defendant Conroy was plaintiff's co-employee, and worked for Clegg's as a salesman and pesticide technician. On 17 March 1999, plaintiff submitted her resignation from Clegg's, in a letter stating that her departure was due to her medical problems, the side effects of various medications, and her feeling that it was unfair for her co-workers to have to "put up with [her] condition." Plaintiff suffered from severe rheumatoid arthritis for which she took numerous medications, some with adverse side effects. However, plaintiff was persuaded not to leave and remained at Clegg's for two more months. On 20 May 1999, plaintiff submitted a second resignation letter, this one stating that she was quitting in

**GUTHRIE v. CONROY**

[152 N.C. App. 15 (2002)]

order to escape sexual harassment by defendant Conroy. She then ceased working for defendant Clegg's.

On 5 October 1999, plaintiff filed suit against defendants, alleging (1) intentional infliction of emotional distress (IIED) by both defendants; (2) negligent infliction of emotional distress (NIED) by both defendants; (3) negligent retention and supervision of Conroy by defendant Clegg's; and (4) civil assault by both defendants. Plaintiff sought compensatory and punitive damages, and attorneys' fees. Defendants filed a summary judgment motion on 26 September 2000, which was heard in November, 2000. On 13 November 2000, the trial court issued an order granting partial summary judgment; the court dismissed all of plaintiff's claims, except for her civil assault action against defendant Conroy. Plaintiff appeals from the grant of summary judgment in favor of defendants.

## Motion to Dismiss Appeal

[1] On 7 March 2001, plaintiff filed a motion "pursuant to rule 54(b) and rule 60," asking the trial court to amend its 13 November 2000 summary judgment order by adding the phrase "final judgment." Plaintiff asserted that without that phrase, the order was interlocutory and not subject to immediate appeal. On 9 March 2001, the trial court entered an amended summary judgment order making the same rulings as its 13 November order, and adding the phrase "final judgment." Plaintiff appealed from the amended order on 20 March 2001.

On 15 June 2001, defendants filed a motion in this Court seeking dismissal of plaintiff's appeal. Defendants argue that the 13 November 2000 summary judgment order was immediately appealable, and that plaintiff was required by N.C.R. App. P. 3(c) to give notice of appeal within 30 days of its entry. We agree.

We note initially that plaintiff has argued that, by failing to appeal from the amended order of 9 March 2001, or to file a cross-assignment of error, defendants waived the right to move for dismissal of plaintiff's appeal. However, defendant's motion for dismissal presents a question of jurisdiction, which may be addressed by this Court at any time, *sua sponte*, regardless of whether defendants properly preserved it for appellate review. *Bailey v. Gooding*, 301 N.C. 205, 208, 270 S.E.2d 431, 433 (1980) ("if an appealing party has no right of appeal, an appellate court on its own motion should dismiss the appeal even though the question . . . has not been raised by the parties themselves").

The summary judgment order from which plaintiff appeals is interlocutory, because it leaves unresolved plaintiff's claim against Conroy for civil assault. *Creech v. Ranmar Props.*, 146 N.C. App. 97, 551 S.E.2d 224 (2001) (order that leaves claims unresolved is interlocutory). An interlocutory order is subject to immediate appeal only under two circumstances: where the order is final as to some claims or parties, and the trial court certifies pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure that there is no just reason to delay the appeal, *see Alford v. Catalytica Pharmaceuticals, Inc.*, 150 N.C. App. 489, 564 S.E.2d 267 (2002), or where the order deprives the appellant of a substantial right that would be lost unless immediately reviewed, *see Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669 (2000).

Thus, if the trial court enters a judgment "which fully terminates" a claim or claims as to "fewer than all the parties," Rule 54(b) allows the trial court to "release it for immediate appeal before the litigation is complete as to all claims or all parties" by certifying that there is "no just reason for delay." *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 490, 251 S.E.2d 443, 446-47 (1979). This is the mechanism by which the trial court expresses its determination that a final judgment should be subject to immediate appeal. *Oestreicher v. Stores*, 290 N.C. 118, 127, 225 S.E.2d 797, 803 (1976) (citation omitted) (trial court functions as a "dispatcher" and determines "the appropriate time when each 'final decision' upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal").

The trial court's 13 November 2000 summary judgment order states that "pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, the undersigned Judge hereby finds that there is no just reason for delay in the plaintiff's taking an appeal from this Order." Plaintiff cites no cases holding that the trial court is also required to use the phrase "final judgment," and we find none. It is the resolution of a claim, rather than the phrase "final judgment" that determines whether an order is 'final.' *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979) ("That the trial court declared it to be a final, declaratory judgment does not make it so."). Nor does N.C.G.S. § 1A-1, Rule 54 require the phrase "final judgment" to be included in a trial court's certification that an order resolving one or more claims is appropriate for immediate appeal:

(a) Definition. A judgment is either interlocutory or the final determination of the rights of the parties.

GUTHRIE v. CONROY

[152 N.C. App. 15 (2002)]

(b) . . . When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal[.]

N.C.G.S. § 1A-1, Rule 54(a) and (b).

The 13 November 2000 summary judgment order was a final judgment as to all of plaintiff's claims against Clegg's, and on all of her claims against Conroy, except for civil assault. Further, the trial court certified, pursuant to N.C.G.S. § 1A-1, 54(b) that there was "no just reason for delay," of an appeal from the order. We conclude, therefore, that the order was properly certified for immediate appeal.

Because the 13 November 2000 order was subject to appeal, plaintiff was required by N.C.R. App. P. 3(c)(1) to file notice of appeal within 30 days of entry of judgment, or no later than 13 December 2000. Plaintiff's notice of appeal, filed 20 March 2001, or 127 days after entry of the 13 November 2000 summary judgment order, was untimely, and subjects her appeal to dismissal. *Herring v. Branch Banking & Trust Co.*, 108 N.C. App. 780, 424 S.E.2d 925 (1993). However, this Court will exercise its discretion and grant *certiorari* to review plaintiff's claims on their merits, pursuant to N.C.R. App. P. 21 (2001). *See Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) ("Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner").

## Standard of Review

Preliminarily, we note that plaintiff characterizes her suit as "a conventional sexual harassment case;" compares the conduct at issue to that "in other sexual harassment cases;" and asserts that defendant Conroy's alleged conduct "constitutes classic sexual harassment that should not be tolerated in any workplace." We therefore find it necessary to clarify the nature of the matters before us on review.

We recognize that the right to be free of sexual harassment in the workplace is addressed in certain federal statutes, *e.g.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (2001) (prohibiting discrimination in the "terms, conditions, or privileges of employment" on the basis of an employee's sex), and is implicated in

our State declaration of public policy, N.C.G.S. § 143-422.2 ("It is the public policy of this State to protect . . . the right . . . of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex"). A civil suit may be brought to redress, *e.g.*, an alleged violation of Title VII, *see Brown v. Henderson*, 155 F. Supp.2d 502 (M.D.N.C. 2000) (setting out elements of Title VII claim of hostile work environment caused by sexual harassment); *Russell v. Buchanan*, 129 N.C. App. 519, 500 S.E.2d 728, *disc. review denied*, 348 N.C. 501, 510 S.E.2d 655 (1998) (employee suit alleging violation of Title VII and N.C. public policy). Such claims focus on the impact of alleged behavior on the workplace, and require proof that the sexual harassment was "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270, 149 L. Ed. 2d 509, 513 (2001) (citation omitted).

However, the plaintiff in the present case does not allege violation of these or other similar statutes. Rather, she has brought common law tort claims for personal injury caused by IIED and NIED. The elements and legal prerequisites of her claims are quite different from those of a Title VII claim. For example, as this is not a statutory "sexual harassment case," plaintiff need not exhaust administrative remedies before bringing her action. *Brooks v. Southern Nat'l Corp.*, 131 N.C. App. 80, 86, 505 S.E.2d 306, 310 (1998), *disc. review denied*, 350 N.C. 592, 536 S.E.2d 626 (1999) (plaintiff not required to exhaust administrative remedies where alleged common law torts are not subject to administrative review). Further, plaintiff's claims of IIED and NIED present issues as to whether the named defendants committed certain acts against this plaintiff; however, plaintiff's claims do not involve a generalized assessment of acceptable workplace behavior, nor an analysis of the "workplace environment." In short, plaintiff has brought a common law tort action alleging personal injury, which we will treat as such.

Plaintiff appeals from the trial court's grant of summary judgment. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, 56(c) (2001). "[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citation omitted). However,

"the real purpose of summary judgment is to go beyond or to pierce the pleadings and determine whether there is a genuine issue of material fact." *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). In response to a motion for summary judgment, the non-movant must "produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000).

On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law. *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd*, 353 N.C. 445, 545 S.E.2d 210 (2001) (citations omitted). Moreover, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

## Intentional Infliction of Emotional Distress

[2] Plaintiff argues first that the trial court erred in its grant of summary judgment for defendants on plaintiff's claim of intentional infliction of emotional distress (IIED). We disagree.

The essential elements of IIED are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge," *Lenins v. K-Mart Corp.*, 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990), and, thus, our review is conducted *de novo, see Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999) (upon challenge to summary judgment order, trial court's "alleged errors of law are subject to *de novo* review").

"A claim for intentional infliction of emotional distress exists 'when a defendant's conduct exceeds all bounds usually tolerated by decent society[.]' " *Watson v. Dixon*, 130 N.C. App. 47, 52-53, 502 S.E.2d 15, 19-20 (1998), *on reh'g*, 132 N.C. App. 329, 511 S.E.2d 37 (1999), *aff'd*, 352 N.C. 343, 532 S.E.2d 175 (2000) (quoting *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979)) (defendant engaged in extreme and outrageous conduct when he "frightened and

humiliated [plaintiff] with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, . . . finally culminating in veiled threats to her personal safety"). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985).

Plaintiff cites *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986), for her assertion that "North Carolina courts have consistently held that sexual harassment constitutes extreme and outrageous conduct intended to cause emotional distress." However, *Hogan* held that a claim for intentional infliction of emotional distress might in appropriate factual circumstances be based upon behavior of a sexual nature. The Court concluded that one of the *Hogan* plaintiffs was entitled to submit her IIED claim to the jury based upon her allegations that

> [defendant] made sexually suggestive remarks to her while she was working, coaxing her to have sex with him and telling her that he wanted to "take" her. He would brush up against her, rub his penis against her buttocks and touch her buttocks with his hands. When she refused his advances, he screamed profane names at her, threatened her with bodily injury, and on one occasion, advanced toward her with a knife and slammed it down on a table in front of her.

*Id.* at 490, 340 S.E.2d at 121. The Court upheld summary judgment against the two other plaintiffs, on the basis that the defendant's alleged behavior towards those plaintiffs was not "outrageous and extreme." *Id.* at 493-94, 340 S.E.2d at 123. Thus, while a claim of IIED may be based upon allegations of sexually harassing behavior, "extreme and outrageous behavior" must be more than "mere insults, indignities, and threats." Further, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan, id. See e.g., Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 378 S.E.2d 232, *disc. review allowed*, 325 N.C. 270, 384 S.E.2d 513, (1989), *review dismissed as improvidently granted*, 326 N.C. 356, 388 S.E.2d 769 (1990) (*prima facie* case of IIED shown where defendant asked plaintiff "how tight [her vagina] was"; indicated that he wanted plaintiff's "long legs wrapped around his body";

grabbed his penis; implied that if plaintiff would have sex with him, [he] would place [her] in another position), and *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 181, 527 S.E.2d 712, 715, *disc. review denied*, 352 N.C. 357, 544 S.E.2d 563 (2000) (defendant "physically assaulted plaintiff, . . . [demanding] sexual relations . . . [and] began masturbating, ultimately ejaculating upon plaintiff's clothing"); *compare with Wilson v. Bellamy*, 105 N.C. App. 446, 468, 414 S.E.2d 347, 359, *disc. review denied*, 331 N.C. 558, 418 S.E.2d 668 (1992) (rejecting IIED claim where "defendants engaged in kissing and heavy petting with the plaintiff in the presence of others" while plaintiff was intoxicated to the point of unconsciousness).

"Because the forecast of evidence as to the factual basis of each [claim of IIED] is unique, each claim must be decided on its own merits." *Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 412, 473 S.E.2d 38, 40 (1996) (quoting *Hogan* at 490, 340 S.E.2d at 121). However, our review of the relevant case law indicates that claims of IIED based upon allegations of sexual harassment generally have included one or more of the following: an unfair power relationship between defendant and plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff, or; defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts. *See, e.g., Poole v. Copland, Inc.*, 348 N.C. 260, 498 S.E.2d 602 (1998) (obscene language; sexual advances; defendant unzips pants and grabs his crotch while making vulgar suggestions to plaintiff); *Waddle v. Sparks*, 331 N.C. 73, 414 S.E.2d 22 (1992) (obscene references to plaintiff's private parts; vulgarity; harasser was plaintiff's supervisor); *Denning-Boyles*, 123 N.C. App. 409, 473 S.E.2d 38 (vulgarity; sexual advances); *Ruff v. Reeves Brothers, Inc.*, 122 N.C. App. 221, 468 S.E.2d 592 (1996) (obscene suggestions; defendants held plaintiff while pulling up her shirt, and, on another occasion, held plaintiff while pulling her legs apart; sexual advances); *Bryant v. Thalhimer Brothers, Inc.*, 113 N.C. App. 1, 437 S.E.2d 519 (1993), *disc. review denied*, 336 N.C. 71, 445 S.E.2d 29 (1994) (vulgar sexual language; threatening behavior; "rubbed his penis across [plaintiff's] hand); *Burlington Industries*, 93 N.C. App. 431, 378 S.E.2d 232 (sexual advances; genital contact; defendant was plaintiff's supervisor); *Hogan*, 79 N.C. App. 483, 340 S.E.2d 116 (sexual advances by supervisor; genital contact; vulgar language).

In contrast, the evidence in the case *sub judice*, taken in the light most favorable to the plaintiff, tends to show that defendant Conroy

engaged in the following behavior: (1) held plaintiff from behind, and touched or rubbed her neck and shoulders; (2) "irritated" her by placing a lampshade on her head when fell asleep with her head on her desk; (3) threw potting soil and water on plaintiff while she was planting flowers at work, remarking when he threw a cup of water on plaintiff that he'd "always wanted to see [her] in a wet T shirt"; and (4) placed a Styrofoam "peanut" and other small objects between the legs of a "naked man" statuette that plaintiff displayed on her windowsill at work and asked her "how she liked it" with the addition.

Plaintiff contends that "[c]omparable conduct has been found sufficient to justify sending the claim to the jury." However, we conclude that defendant Conroy's alleged behavior, while annoyingly juvenile, obnoxious, and offensive, does not rise to the level of "outrageous and extreme" as the term has been interpreted and applied in tort actions alleging IIED. We note that Conroy was not plaintiff's supervisor or workplace superior; that he did not swear or employ obscene language; that he referred to nothing more vulgar than a "wet T shirt"; that although he gave plaintiff a "shoulder rub" against her wishes, he never expressed any interest in sexual activity with plaintiff; and that, notwithstanding allegations in plaintiff's complaint that defendant dropped items down the front of her blouse, the only specific instance of this behavior she described was his throwing potting soil at her while she planted flowers. This Court does not condone defendant's behavior. However, in the context of the tort claims that plaintiff brought against defendants, we conclude that defendant Conroy's behavior was not "atrocious, and utterly intolerable in a civilized community" or "extreme and outrageous." We further conclude that, because plaintiff failed to present evidence of this essential element of her claim, the trial court did not err in granting summary judgment for defendant Conroy on plaintiff's IIED claim.

Plaintiff also brought claims of IIED against defendant Clegg's, basing their alleged liability on a theory of respondeat superior, and arguing that Clegg's ratified Conroy's tortious behavior. However, having concluded that defendant Conroy did not engage in the alleged tortious behavior, we necessarily conclude that plaintiff has no claim against defendant Clegg's for ratification. *Denning-Boyles*, 123 N.C. App. at 413, 473 S.E.2d at 41 ("liability of [employee] is essential if [employer] is to be held responsible under a theory of respondeat superior").

For the reasons discussed above, we conclude that the trial court did not err by granting summary judgment for defendants on plaintiff's claims of IIED.

## Negligent Infliction of Emotional Distress

[3] Plaintiff argues next that the trial court erred in granting summary judgment for defendants on her claims of negligent infliction of emotional distress (NIED). We disagree.

The elements of NIED are "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Negligence is the breach of a legal duty owed by defendant that proximately causes injury to plaintiff. *Tise v. Yates Construction Co.*, 345 N.C. 456, 480 S.E.2d 677 (1997). "In order to establish actionable negligence, a plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligen[t] breach of such duty was the proximate cause of the injury." *Gordon v. Garner*, 127 N.C. App. 649, 661, 493 S.E.2d 58, 65 (1997), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 86 (1998). "A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Davis v. N.C. Dept. of Human Resources*, 121 N.C. App. 105, 112, 465 S.E.2d 2, 6 (1995), *disc. review denied*, 343 N.C. 750, 473 S.E.2d 612 (1996) (citation omitted).

Plaintiff correctly states that NIED may be predicated upon negligent conduct, and does not require proof of extreme and outrageous conduct, and further argues that "even if Conroy's conduct was not outrageous and extreme, it was sufficient to constitute [NIED]." However, plaintiff alleges no duty that Conroy owed plaintiff, and no evidence was presented of a breach of any duty of care owed by Conroy to plaintiff. Absent a breach of duty of care, plaintiff's suit against Conroy for NIED cannot be maintained. *See Fox-Kirk v. Hannon*, 142 N.C. App. 267, 273, 542 S.E.2d 346, 352, *disc. review denied*, 353 N.C. 725, 551 S.E.2d 437 (2001) (NIED claim requires proof of negligent act by defendant).

Moreover, the liability of defendant Clegg's for negligence is predicated upon tortious behavior of Conroy, and is derivative of Conroy's commission of tortious acts. *Hogan*, 79 N.C. App. at 495, 340 S.E.2d at 124 ("before the employer can be held liable, plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff"); *Barnes v. McGee*, 21 N.C. App. 287, 289, 204 S.E.2d 203, 205 (1974) ("judgment on the merits in favor of the employee precludes *any* action against the employer where, as here, the employer's liability is purely derivative"). Thus, because we have upheld the trial court's grant of summary judgment on plaintiff's IIED and NIED claims against defendant Conroy, defendant Clegg's cannot be liable for NIED based upon Conroy's behavior. We conclude, therefore, that the trial court did not err by granting summary judgment in favor of both defendants on plaintiff's claim of NIED.

## Negligent Retention and Supervision

**[4]** Absent a viable tort claim against Conroy, plaintiff cannot maintain an action against Clegg's for negligent retention and supervision of Conroy. *McLain*, 137 N.C. App. at 190, 527 S.E.2d at 720 (where there is "no liability on the part of [employee], plaintiff's claims against [employer] asserting ratification of [employee's] actions and negligent retention of [employee] may not be [maintained]"); *Hogan*, 79 N.C. App. at 496-97, 340 S.E.2d at 125 (where "the evidence is insufficient to establish that . . . [plaintiffs have] been injured by actionable tortious conduct of an employee of defendant, neither of them may maintain an action against defendant based upon its negligence in employing or retaining the allegedly incompetent employee"). We conclude, therefore, that the trial court's grant of summary judgment on plaintiff's NIED and IIED claims against Conroy precludes defendant Clegg's liability for negligence in supervising and retaining Conroy in regard to those claims.

## Ratification of Civil Assault

**[5]** Plaintiff also assigns error to the trial court's grant of summary judgment on defendant Clegg's liability for the alleged civil assault by Conroy, and contends that evidence was presented of Clegg's liability on the theory of ratification.[1] The civil assault was the only claim to survive defendants' motion for summary judgment.

---

1. Although plaintiff also argues that Clegg's was liable for its negligent retention or supervision of Conroy as regards his alleged civil assault, this claim was not made in plaintiff's complaint and, therefore, is not considered by this Court. *Elliott v. Owen*, 99 N.C. App. 465, 472, 393 S.E.2d 347, 351 (1990) (where "plaintiff has failed to raise

Ratification has been defined by this Court as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account," and "may be inferred from failure to repudiate an unauthorized act . . . or from conduct . . . inconsistent with any other position than intent to adopt the act." *American Travel Corp. v. Central Carolina Bank*, 57 N.C. App. 437, 442, 291 S.E.2d 892, 895, *disc. review denied*, 306 N.C. 555, 294 S.E.2d 369 (1982) (citation omitted). To establish that an employer has ratified an employee's actions, it must be shown that the employer had "full knowledge of all the material facts," *American Travel, id.*, or had "knowledge of facts which would lead a person of ordinary prudence to investigate further." *Denning-Boyles*, 123 N.C. App. at 415, 473 S.E.2d at 42 (citation omitted). Further, "[t]he jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts[,] and "[s]uch course of conduct may involve an omission to act." *Burlington Industries*, 93 N.C. App. at 437, 378 S.E.2d at 236 (citation omitted).

In the instant case the evidence, taken in the light most favorable to the plaintiff, tends to show that in August, 1998, plaintiff complained to her supervisor, Joseph Joy, that defendant Conroy had placed a Styrofoam 'peanut' between the legs of a nude 'action hero' doll that plaintiff displayed on her windowsill; Joy indicated he had not personally witnessed the incident, and took no further action. At some point during the next few months, when plaintiff had laid her head down on her desk, Conroy placed a lampshade on her head. Instead of disciplining Conroy for this behavior, Joy laughed and asked plaintiff if she had "a new hat." According to plaintiff, she next complained in January, 1999, when she contacted company management in Durham, and told an administrator that she was "having trouble with one of the technicians," but did not identify Conroy. The administrator requested that she allow Clegg's "local management" to resolve the problem. Plaintiff then discussed Conroy's behavior with Joy, who told her he would "handle it." However, Joy's interventions, if any, were insufficient to prevent Conroy from continuing to bother plaintiff. In April, 1999, she again called the Durham office to complain, this time telling them the details of various incidents. The following day Clegg's owner, Phil Clegg, flew to Morehead City, where he convened a meeting of the entire staff of plaintiff's office to review the company's policy against sexual harassment. Clegg warned his

issue] . . . in her complaint . . . [the] contention is not properly before [appellate court]").

employees that sexual harassment "would not be tolerated" by the company. However, shortly after the staff meeting, while plaintiff was planting flowers at work, another incident occurred in which Conroy threw potting soil in plaintiff's hair, and also got her wet while they were watering the flowers, prompting his remark that he'd "always wanted to see [her] in a wet T shirt." Joy was made aware of the incident, but he took no disciplinary action. When Clegg's administrators called plaintiff to follow up on the staff meeting and inquire whether the situation was resolved, plaintiff reported the flower-planting incident. In response, a Clegg's administrator returned to their office. This time, the office was remodeled to place a privacy wall around plaintiff's desk, and Conroy was formally reprimanded. Thereafter, Conroy "stayed away" from plaintiff.

We conclude that plaintiff's evidence regarding the response of Joy, her immediate supervisor, to Conroy's behavior is sufficient to create a genuine issue of material fact regarding Clegg's ratification of Conroy's alleged civil assault against plaintiff. Moreover, given the evidence that Clegg's directed plaintiff to "let local management handle" the problem, we conclude that Joy's failure to intervene raises a genuine issue of material fact as to the company's ratification. *See Burlington Industries*, 93 N.C. App. 431, 378 S.E.2d 232 (jury question presented regarding company's ratification of defendant's actions, notwithstanding company's eventual discharge of defendant, where plaintiff's immediate supervisor took no action for two years). We conclude that the trial court erred in granting summary judgment on the issue of Clegg's ratification of Conroy's alleged civil assault against plaintiff.

We hold that the trial court did not err in entering summary judgment for defendants on plaintiff's claims of IIED and NIED, and on her claim against Clegg's for negligent retention or supervision as regards IIED and NIED; accordingly, these portions of the court's order are affirmed. We further hold that the trial court erred by granting summary judgment for defendant Clegg's on plaintiff's claim that Clegg's ratified the alleged civil assault by Conroy, and that part of the trial court's order is reversed.

Affirmed in part, reversed in part.

Judges WYNN and McCULLOUGH concur.