WENDY H. POOLE v. COPLAND, INC. AND JOHN HAYNES

No. 145PA97

(Filed 8 May 1998)

**1. Intentional Infliction of Mental Distress § 3.1 (NCI4th)— thin skull rule—proper application**

There was no error in the application of the thin skull rule in an action for the intentional infliction of emotional distress by sexual harassment where the trial court charged the jury that it would have to find that the individual defendant's wrongful actions under the same or similar circumstances could reasonably have been expected to injure a person of ordinary mental condition, the evidence permitted a finding of liability· before application of the thin skull rule, and the jury was instructed that it must so find.

**2. Intentional Infliction of Mental Distress § 3.1 (NCI4th)— thin skull rule—instructions—effect on person of ordinary mental condition**

The trial court's instructions on the thin skull rule in an action for the intentional infliction of emotional distress by sexual harassment adequately informed the jury that it could not find that plaintiff had been injured by a flashback to her suppressed mental problems until it first found that the individual defendant's actions could have caused severe emotional distress to a person of ordinary mental condition.

**3. Intentional Infliction of Mental Distress § 3.1 (NCI4th)— thin skull rule—exacerbation of dissociative disorder— instructions on liability—injury to person of ordinary mental condition**

The trial court's instructions on the thin skull rule in an action for the intentional infliction of emotional distress did not

**POOLE v. COPLAND, INC.**

[348 N.C. 260 (1998)]

improperly allow the jury to find liability based solely on a finding that the individual defendant's conduct exacerbated plaintiff's preexisting dissociative disorder; rather, the instructions clearly told the jury that it must find that the wrongful actions under the same circumstances could reasonably have been expected to injure a person of ordinary mental condition before it could hold defendants liable for all the harmful consequences of the individual defendant's actions.

**4. Intentional Infliction of Mental Distress § 3.1 (NCI4th)— thin skull rule—instructions during damages phase— absence of prejudice**

Defendant was not prejudiced by the fact that thin skull instructions in an action for the intentional infliction of emotional distress were given during the part of the charge on damages rather than during the liability phase.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 125 N.C. App. 235, 481 S.E.2d 88 (1997), awarding defendant Copland, Inc. a new trial and reversing a judgment entered by Hudson, J., on 16 November 1994, in Superior Court, Alamance County. Heard in the Supreme Court 17 November 1997.

In this action, the plaintiff sued John Haynes for intentional and negligent infliction of emotional distress. She sued Copland, Inc., her former employer, for ratification of Haynes' conduct, negligent retention and supervision of Haynes, and imputed liability.

The plaintiff testified that during a one-year period while she was working for defendant Copland, she was intimidated on many occasions by defendant Haynes, a fellow worker. On one occasion, they were discussing the relative merits of Camaro and Mustang automobiles when Haynes told the plaintiff she "looked like the type of person that needed somebody to go up inside [her] about two car lengths deep." The plaintiff asked Haynes not to talk to her in that way. She reported the incident to her supervisor, Bill White.

The plaintiff testified to numerous other similar incidents, including an occasion when Haynes asked the plaintiff if she was happily married and whether she had "had a man lately." Haynes told her: "You haven't had a man until you've had me. . . . I've got twelve inches hanging." Another time, the plaintiff turned around to find Haynes standing behind her with his pants unzipped. She asked Haynes what

**POOLE v. COPLAND, INC.**

[348 N.C. 260 (1998)]

he was doing, and he replied: "Well, I was going to show you what a real man felt like . . . ." Later, Haynes told her that once she "had" him, she would never go back to her husband. She testified he told her that her husband, Kevin, "had better hold tight to me at night because [Haynes] would slide in right beside of Kevin and f--- my eyes out and make Kevin like it." Although the plaintiff reported these incidents to White, he told her that Haynes "was just a youngun', to ignore him," and that Haynes "was only picking."

Haynes asked the plaintiff if she was a natural redhead and said: "There's not but one way for me to find out that you're a true redhead . . . . I just need to see your p---y hair." Haynes asked the plaintiff if she gave "blow jobs." On another occasion, the plaintiff and several others were in White's office when Haynes grabbed his crotch and asked her: "[H]ave you made up your mind whether or not you want some of this or not?" The plaintiff told White: "Bill, you see. You see I'm not lying. Why do you let this go on?" According to the plaintiff, White laughed, telling her to let it go and that Haynes was "just joking."

On the day before the last day she worked at Copland, the plaintiff was in the parking lot with her husband. Haynes was there. He grabbed his crotch and made an obscene gesture toward the plaintiff. The plaintiff reported this incident to her superiors. The next day, a meeting was held, with the plaintiff and Haynes in attendance. Also present were the plaintiff's superiors, including the president of the corporation. Haynes admitted that he had grabbed his crotch in the parking lot the previous day, and he was terminated at that meeting. The plaintiff's employment was terminated later that day.

The plaintiff testified that the harassment caused her to cry when she came home from work and that she had trouble sleeping and had nightmares. She said, "I got to where I couldn't eat. I was throwing up green phlegm all the time. My bowels wouldn't move." Her relationship with her husband also suffered.

The plaintiff also testified to a history of sexual abuse. As a child, she had been locked in a closet by a friend of her father's for two weeks, with her hands and feet bound with duct tape. The man took her out on several occasions to rape her. At the age of nine, she was sexually molested. She gave birth to an illegitimate child at the age of fifteen. She then married the child's father, a physically abusive drug addict, at the age of sixteen and divorced him when she was twenty-one years of age. An uncle sexually molested her when she was eigh-

POOLE v. COPLAND, INC.

[348 N.C. 260 (1998)]

teen years of age. The plaintiff's father was an alcoholic who physically abused her and her mother and sister.

Two psychiatrists and a clinical psychologist testified for the plaintiff. They testified that the plaintiff was suffering from posttraumatic stress disorder, dissociative disorder, and depression. A posttraumatic stress disorder occurs when a person has had a traumatic experience, and he or she reexperiences the trauma again and again.

A dissociative disorder occurs when a person has had a bad experience and rather than being stored normally in the brain as a memory, it is broken into several parts and stored in the brain so the person does not remember it and does not have to face it. A traumatic experience can cause the parts to reunite, and the person then remembers the bad experience. This is called an abreaction or flashback.

The experts testified that the plaintiff had a dissociative disorder in regard to the experiences she had while growing up. The experiences at Copland had caused a flashback, and all the earlier experiences were remembered. This caused serious mental problems for the plaintiff. At the end of the evidence, the court dismissed all claims except the claim for intentional infliction of emotional distress against Haynes and the claims against Copland for ratification of Haynes' conduct and negligent retention of Haynes.

The jury awarded the plaintiff $2,000 in actual damages and $5,000 in punitive damages against Haynes. The jury awarded the plaintiff $50,000 in actual damages and $250,000 in punitive damages against Copland. Haynes did not appeal.

The Court of Appeals ordered a new trial for an error in the charge. We allowed petitions for discretionary review by both parties.

*Daniel H. Moore and Hunt and White, by Octavis White, George Hunt, and Andrew Hanford, for plaintiff-appellant.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., and Denis E. Jacobson, for defendant-appellant.*

WEBB, Justice.

This case brings to the Court a question as to the application of the "thin skull" rule. This rule provides that if the defendant's misconduct amounts to a breach of duty to a person of ordinary susceptibility, he is liable for all damages suffered by the plaintiff

**POOLE v. COPLAND, INC.**

[348 N.C. 260 (1998)]

notwithstanding the fact that these damages were unusually extensive because of the peculiar susceptibility of the plaintiff. *Lockwood v. McCaskill*, 262 N.C. 663, 670, 138 S.E.2d 541, 546 (1964).

The plaintiff recovered damages in this case because of a flashback resulting from her dissociative disorder. She was allowed to recover the full extent of her damages from the defendant because of her peculiar susceptibility to matters that cause severe emotional distress. This is an application of the thin skull rule.

[1] Defendant Copland asserts that there was error in the trial because the jury was allowed to consider the thin skull damages when it determined the liability issue. This, says the defendant, let the jury find liability without finding that defendant Haynes' action could have caused severe emotional distress in a person of ordinary susceptibility. We disagree.

There was testimony by Kim Ragland, a clinical psychologist, that a person of ordinary sensibilities with no prior sexual history could be affected the same way the plaintiff was affected in this case. The trial court charged the jury that it would have to find that Haynes' wrongful actions under the same or similar circumstances could reasonably have been expected to injure a person of ordinary mental condition. The evidence permitted a finding of liability before application of the thin skull rule, and the jury was instructed that it must so find. We presume the jury followed the court's instructions. There was no error in the application of the thin skull rule.

[2] The Court of Appeals held that the superior court failed to adequately charge that the jury could not find the plaintiff had been injured by a flashback to her suppressed mental problems until it first found that Haynes' actions could have caused severe emotional distress to a person of ordinary mental condition. The plaintiff assigns error to this holding by the Court of Appeals. We believe this assignment of error has merit.

The court charged the jury as follows:

Now, members of the jury, in deciding whether the plaintiff's injury was a foreseeable consequence of the defendant Haynes' wrongful actions, you must determine whether such wrongful actions under the same or similar circumstances could reasonably have been expected to injure a person of ordinary mental condition. If so, the harmful consequences from the defendant's wrongful acts would be reasonably foreseeable and

**POOLE v. COPLAND, INC.**

[348 N.C. 260 (1998)]

therefore would be a proximate cause of plaintiff's injury. Under such circumstances the defendant would be liable for all the harmful consequences which occur even though these harmful consequences may be unusually extensive because of the peculiar or abnormal mental condition which happened to be present in the plaintiff.

The court later charged:

Once again, members of the jury, in deciding whether the plaintiff's injury was a foreseeable consequence of the defendant Haynes' wrongful actions, you must determine whether such wrongful actions under the same or similar circumstances could reasonably have been expected to injure a person of ordinary mental condition. If so, the harmful consequences from the defendant's wrongful acts would be reasonably foreseeable and therefore would be a proximate cause of the plaintiff's injury. Under such circumstances the defendant would be liable for all the harmful consequences which occurred even though these harmful consequences may be unusually extensive because of the peculiar or abnormal mental condition which happened to be present in the plaintiff.

These were adequate instructions on this feature of the case.

Defendant Copland contends it was error to give this instruction because there is no evidence in the record that Haynes' conduct exacerbated the plaintiff's preexisting dissociative disorder. The Court of Appeals correctly dealt with this question, and we did not allow review on it.

[3] Defendant Copland also contends that the instruction was erroneous because it allowed the jury to find liability based solely on a finding that Haynes' conduct exacerbated the plaintiff's preexisting condition. We disagree. The instruction clearly told the jury that it must find that the "wrongful actions under the same . . . circumstances could reasonably have been expected to injure a person of ordinary mental condition" before it could hold defendant Copland liable for all the harmful consequences of Haynes' action.

Defendant Copland also contends under this assignment of error that the thin skull rule applies to only physical, not mental, injuries. The Court of Appeals answered this question adversely to the defendant, and we did not allow review on this issue.

**[4]** Finally, defendant Copland contends that the charge was in error because the instructions were given during the part of the charge on damages rather than during the liability phase. We note that in Copland's assignment of error, it says it was error to let the thin skull rule be considered during the liability phase of the case. We cannot hold this was error. Assuming this part of the charge should have been given during instructions on the liability issue, the defendant was not prejudiced. The jury was properly charged as to how damages were to be calculated, and we assume the jury followed the court's charge.

For the reasons given in this opinion, we reverse the Court of Appeals and remand for reinstatement of the judgment of the superior court.

REVERSED AND REMANDED.