**Tracy MOODY–WILLIAMS, Plaintiff,**

v.

**LIPOSCIENCE, Louvenia Clemons, and Ronald Bess, Defendants.**

No. 5:12–CV–104–FL.

United States District Court,
E.D. North Carolina,
Western Division.

June 18, 2013.

Tracy Moody–Williams, Franklinton, NC, pro se.

Gretchen W. Ewalt, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Raleigh, NC, for Defendants.

## ORDER

LOUISE W. FLANAGAN, District Judge.

This matter is before the court on memorandum and recommendation ("M & R") of United States Magistrate Judge Robert B. Jones, Jr. (DE 32), recommending this court allow defendants' partial motion to dismiss (DE 13). Plaintiff, appearing *pro se*, responded to the motion to dismiss and objected to the M & R. Defendants filed a memorandum in support of the M & R, to which plaintiff responded. The issues raised are ripe for ruling. For the follow-

ing reasons, the court adopts the M & R and grants defendants' partial motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff originated this employment discrimination lawsuit *pro se* on February 2, 2012, in Superior Court of Franklin County, North Carolina. LipoScience, Louvenia Clemons, and Ronald Bess (collectively "defendants") timely filed a notice of removal on March 1, 2012, pursuant to 28 U.S.C. § 1331, based on plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Genetic Information Non-discrimination Act ("GINA"), and the Age Discrimination in Employment Act ("ADEA"). Plaintiff also asserts a claim pursuant to North Carolina tort law for intentional infliction of emotional distress ("IIED"). On March 13, 2012, plaintiff moved to amend her complaint. On March 26, 2012, defendants filed a partial motion to dismiss and answered the complaint. On April 19, 2012, plaintiff filed a response to defendants' answer and two responses to defendants' motion to dismiss. On May 7, 2012, defendants replied in support of their partial motion to dismiss, to which plaintiff filed a surreply on May 18, 2012. By order on May 18, 2012, the court stayed discovery until after the resolution of defendants' pending partial motion to dismiss. On September 6, 2012, plaintiff was allowed to amend her complaint by order. Order was accompanied by the M & R recommending allowance of defendants' partial motion to dismiss which is now before the court. On September 28, 2012, plaintiff moved to remand the case to state court and for reimbursement of expenses. Subsequently, defendants filed two motions to strike. These three

motions were denied by order entered March 26, 2013, 2013 WL 1246752. Therefore, the only matter that remains to be resolved before stay of discovery may be lifted is defendants' partial motion to dismiss.

## STATEMENT OF FACTS [1]

The court incorporates by reference the factual background in the M & R, and briefly summarizes those facts as follows. Plaintiff began a temporary employee position at LipoScience, a diagnostic company in Raleigh, North Carolina, on February 10, 2010. Plaintiff obtained her position there as a data control specialist through a temporary employment agency, Innovative Talent Solutions ("ITS").

Plaintiff's work was supervised by defendant Clemons, who exhibited an array of inappropriate work behaviors. According to plaintiff, defendant Clemons advised plaintiff to work more slowly so that she could fill the day with assignments given, gave plaintiff tasks that were not work-related such as organizing binders and writing a resume for defendant Clemons's boyfriend. Defendant Clemons also gossiped, ignored plaintiff's concerns about coworkers (including defendant Bess), skipped work without letting others know she would be absent, and watched television shows on her work computer. Plaintiff felt that the working environment created by defendant Clemons was so poor that she ate lunch in her car, but did not quit or report defendant Clemons to human resources ("HR") because she needed the job and hoped to secure a permanent position.

Plaintiff's work at LipoScience slowed and eventually they did not have work for her, so she left the position on July 23, 2010, and used that time to get a needed

---

1. As discussed *infra,* the alleged facts in the complaint are accepted as true for the purpose of evaluating defendants' partial motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

surgery. Defendant Clemons had told plaintiff that summer months were slow, but there would be more work for plaintiff later in the year. Accordingly, plaintiff returned to work on August 23, 2010. A few days earlier, on August 20, 2012, plaintiff obtained a prescription for Prozac, due to her depression about returning to work at LipoScience.[2]

Upon return to work, defendant Bess began to harass plaintiff by flirting and expressing interest in her. Defendant Bess's behavior was undeterred by meeting plaintiff's husband. Defendant Bess attempted to kiss plaintiff after following her to her car. He also attempted to follow plaintiff into the women's restroom and kiss her. These types of incidents continued, becoming more aggressive. In response plaintiff would push defendant Bess away and/or turn away from him. Plaintiff was afraid of defendant Bess and suffered from panic attacks due to his presence.

Plaintiff talked about defendant Bess with her co-workers, who responded with stories of similar behavior that defendant Bess had displayed in the past toward other women working at LipoScience. Plaintiff reported defendant Bess's behavior to defendant Clemons, who also knew of past similar behaviors. Defendant Clemons indicated that she would talk to her boss and get back to plaintiff. Plaintiff's anxiety worsened over the course of her employment, to the point where she was prescribed Xanax on January 18, 2011. Plaintiff was terminated from her position on February 14, 2011.

## DISCUSSION

### A. Standard of Review

The district court reviews *de novo* those portions of an M & R to which specific

objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M & R. *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir.2005); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

■ "A document filed *pro se* is to be liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). *See also Wojcicki v. Aiken Technical Coll.,* 360 Fed.Appx. 484, 487 (4th Cir.2010) (a *pro se* Title VII litigant is entitled to have pleadings read liberally). Liberal construction is particularly appropriate when a *pro se* complaint raises civil rights issues. *Brown v. N. Carolina Dept. of Corr.,* 612 F.3d 720, 722 (4th Cir.2010). However,

a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them. . . . The special judicial solicitude with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.

---

**2.** Her dosage was doubled a few weeks after she returned to work. Pl.'s Obj. to M & R 13–

14.

*Weller v. Dep't of Soc. Services for City of Baltimore,* 901 F.2d 387, 391 (4th Cir.1990) (internal quotation marks omitted).

### B. Rule 12(b)(1) Dismissal of ADA, GINA & ADHA Claims

 Before bringing a discrimination claim under Title VII, a plaintiff must first file a discrimination charge with the EEOC. This charge determines the scope of the plaintiff's right to bring a subsequent Title VII action in federal court. *See, e.g., Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir.2002). "[O]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Servs. Co.,* 80 F.3d 954, 963 (4th Cir.1996). As noted in the M & R, a plaintiff's failure to exhaust administrative remedies in an EEOC action deprives the court of subject matter jurisdiction over the claim. *Jones v. Calvert Group, Ltd.,* 551 F.3d 297, 300 (4th Cir. 2009).

 The Fourth Circuit takes a narrow approach to determining if claims are "reasonably related" to or "developed by reasonable investigation of the original complaint." *Evans,* 80 F.3d at 963. If the EEOC charge alleges · discrimination on one basis, and the federal action alleges discrimination on a different basis, the separate federal claim will generally be barred. *Jones,* 551 F.3d at 300. The Fourth Circuit has held that a plaintiff may not expand an adverse employment action beyond the allegations stated in the original EEOC charge. *Chacko v. Patuxent Institution,* 429 F.3d 505, 509 (4th Cir.2005).

Defendants contend that plaintiff has failed to exhaust her administrative reme-dies with respect to her discrimination claims under the ADA, ADEA, and GINA, and move to dismiss plaintiff's complaint in part on this ground. Plaintiff responded in agreement by filing on April 19, 2012, also asking the court not to consider claims pursuant to these three statutes. Plaintiff does not concede any other claims. Therefore, defendants' motion to dismiss in part is granted as to plaintiff's ADA, ADEA, and GINA claims.

### C. 12(b)(6) Partial Motion to Dismiss

Defendants challenge the pleadings, in part, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating their motion, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir.2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Nemet Chevrolet,* 591 F.3d at 255 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

"Asking for plausible grounds ... does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. Furthermore, the complaint need not set

forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.' " *Nemet Chevrolet*, 591 F.3d at 256 (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). In evaluating the factual content necessary to survive a motion to dismiss, however, the court does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Id.* at 255 (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Wahi v. Charleston AreaMed. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir.2009)) (internal quotation marks omitted).

"At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task.' " *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). If the properly considered factual allegations, viewed in context, fail to "nudge[ ] ... claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of [that] line." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks omitted).

### 1. Liability of Individual Defendants under Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex," 42 U.S.C. § 2000e–2(a)(1). Only an "employer" is liable under Title VII; the

statute does not permit individual liability. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir.1998).

■ Plaintiff objects to the recommendation contained in the M & R that the court grant defendant's partial motion to dismiss with regard to the Title VII claim against the individual defendants. Here, plaintiff has properly brought her Title VII claim against LipoScience, but plaintiff cannot bring a Title VII claim against the individual defendants. *See Lissau*, 159 F.3d at 180–81. Thus, plaintiff's objection as to the Title VII claim is overruled, the analysis in the M & R is adopted, and defendants' motion to dismiss as to the liability of individual defendants under Title VII is granted.

### 2. Intentional Infliction of Emotional Distress

■ In North Carolina, intentional infliction of mental distress consists of: (1) extreme and outrageous conduct; (2) that is intended to cause severe emotional distress to another; and (3) that does in fact cause severe emotional distress to another. *Holloway v. Wachovia Bank & Trust Co.*, 339 N.C. 338, 351, 452 S.E.2d 233, 241 (1994). Whether the alleged conduct is sufficiently extreme and outrageous is a question of law. *Mitchell v. Lydall, Inc.*, No. 93–1374, slip op. at 3, 16 F.3d 410, 1994 WL 38703 (4th Cir. Feb. 10, 1994) (unpublished per curiam opinion). To be considered "extreme and outrageous" the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal citations and quotation marks omitted). Furthermore, in the employment context, it is an "extremely rigorous standard." *Thomas v. Northern Telecom*, 157 F.Supp.2d 627, 635 (W.D.N.C.2000).

For example, in *Keziah v. W.M. Brown & Son*, 888 F.2d 322 (4th Cir.1989), the district court's grant of summary judgment for defendant was affirmed on plaintiff's IIED claim when plaintiff alleged, among other things, that her telephone messages were withheld and used by male sales representatives to usurp her sales leads, information was secretly removed from her files and mail, and she was harassed, humiliated, and otherwise subject to an adverse employment environment. *Id.* at 326–27 (citing *Hogan v. Forsyth Country Club*, 79 N.C.App. 483, 340 S.E.2d 116 (1986)).

Furthermore, claims of IIED based upon sexual harassment generally include a combination of explicitly obscene language, sexual advances, and/or sexual touching. *Compare Poole v. Copland, Inc.*, 348 N.C. 260, 261–62, 498 S.E.2d 602, 603 (1998) (recognizing an IIED claim sufficient to go to a jury where defendant repeatedly used explicitly obscene language to describe what he would do to plaintiff, touched his genitals in her presence while propositioning plaintiff or gesturing toward her obscenely, and stood behind her with his pants unzipped suggesting he would "show [plaintiff] what a real man felt like"), *with Guthrie v. Conroy*, 152 N.C.App. 15, 24, 567 S.E.2d 403, 410 (2002) (finding summary judgment for defendant where defendant held plaintiff from behind, rubbed her shoulders, threw potting soil and water on plaintiff remarking he had "always wanted to see [her] in a wet T shirt," and placed objects suggestively between the legs of a nude male statuette, asking how plaintiff "liked it").

■■■ Plaintiff alleges that defendant Clemons was rude, gossiped, lied, made plaintiff perform tasks that were outside the scope of her job at LipoScience, and interfered with plaintiff's ability to work in both her department and in the lab. The case law is replete with scenarios arguably more outrageous than what plaintiff has described that have been found insufficient to constitute extreme and outrageous conduct. *See, e.g., Smith v. Computer Task Group, Inc.*, 568 F.Supp.2d 603, 622 (M.D.N.C.2008) (finding no extreme or outrageous conduct when employer allegedly intentionally terminated plaintiff's employment, health benefits, and worker's compensation benefits even though employer was aware of an injury plaintiff sustained while on the job); *Atkins v. U.S.F. Dugan, Inc.*, 106 F.Supp.2d 799, 810–11 (M.D.N.C.1999) (finding conduct not extreme or outrageous when employee was told he was too old and sick to handle his job and was allegedly terminated in violation of federal and state discrimination laws); *Pardasani v. Rack Room Shoes, Inc.*, 912 F.Supp. 187, 192 (M.D.N.C.1996) (finding conduct not extreme and outrageous when plaintiff alleged he was given poor performance evaluations, denied promotions available to others, excluded from training, and finally terminated); *Hogan*, 79 N.C.App. at 493–94, 340 S.E.2d at 122–23 (finding conduct not extreme or outrageous when coworker "screamed and shouted at [plaintiff], called her names, interfered with her supervision of waitresses under her charge and on one occasion threw menus at her"). Therefore, plaintiff has failed to state a claim for IIED as to defendant Clemons.

■■■ Plaintiff alleges that defendant Bess attempted to kiss her, followed her to her car and the restroom, and became more aggressive with his flirtations so that she had to physically push him away. This type of conduct, while improper, does not rise to the level of "extreme and outrageous" conduct that North Carolina requires for a claim of IIED where sexual harassment is at issue. Plaintiff does not allege that defendant Bess used any vulgar or obscene language, made sexually explic-

it gestures, or touched either plaintiff or himself in the chest or genital region. *See Poole*, 348 N.C. at 261–62, 498 S.E.2d at 603; *Ruff v. Reeves Bros., Inc.*, 122 N.C.App. 221, 226–27, 468 S.E.2d 592, 596 (1996) (finding a claim survived summary judgment where defendants held plaintiff down while pulling up her bra and shirt, explicitly described sexual encounters, stated they wanted to have sex with plaintiff and eat her, and pulled plaintiff's legs apart, in addition to non-sexual forms of harassment).[3] In sum, the court finds that reading the facts as alleged in plaintiff's amended complaint in the light most favorable to her, plaintiff has not plead facts sufficient to meet the first element a claim for IIED against either defendant Clemons or defendant Bess.[4] Therefore, the court adopts the evaluation within the M & R of the first element of plaintiff's IIED claim and grants defendants' partial motion to dismiss.

## CONCLUSION

Upon *de novo* review of those portions of the M & R to which specific objections have been filed, and upon considered review of those portions of the M & R to which no such objection has been made, the court ADOPTS the M & R as set forth above, and GRANTS defendants' partial motion to dismiss (DE 13). Defendants Clemons and Bess are DISMISSED from this action where no claims remain against them. The stay of discovery proceedings is hereby LIFTED for plaintiff to proceed against defendant LipoScience. An order directing the parties' pre-trial activities will follow. The court of its own initiative, to further the efficient administration of the action, restyles the case caption to exclude reference to those defendants now dismissed, and directs plaintiff and the remaining defendant to take note of this in their further case filings.

SO ORDERED.

## ORDER AND MEMORANDUM AND RECOMMENDATION

ROBERT B. JONES, JR., United States Magistrate Judge

This matter is before the court on the following motions:

1. Motion to Amend Complaint filed by *pro se* Plaintiff Tracy Moody–Williams ("Plaintiff") [DE–10];

2. Partial Motion to Dismiss the complaint of Plaintiff for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6), filed by Defendants LipoScience, Louvenia demons, and Ronald Bess ("Defendants") [DE–13]; and

3. Motion for Judicial Notice filed by Plaintiff [DE–29].

All briefing is complete, and the pending motions are ripe for adjudication. Plain-

---

3. Courts have recognized that the showing required for sexual harassment-related IIED claims is higher than those same claims under Title VII. *See Guthrie*, 152 N.C.App. at 19–20, 567 S.E.2d at 407–408. As defendants have not moved for dismissal of plaintiff's Title VII claim as to plaintiff's employer, defendant LipoScience, the court does not evaluate plaintiff's claim of discrimination based on sex at this time.

4. As plaintiff has failed to demonstrate the first element of her IIED claim in this case, the court need not reach the evaluation of subsequent elements in the M & R or plaintiff's objections thereto. The court adopts the magistrate judge's thoughtful analysis of the first element of this claim as to each individual defendant. Additionally, the court recognizes that any IIED claim against defendant LipoScience must necessarily be dismissed without any individual defendants upon which to base liability.

tiff's motion to amend her complaint and her motion for judicial notice are considered here for determination in accordance with 28 U.S.C. § 636(b)(1)(A). *See* Local Civil Rule 72.3(b). The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendants' motion to dismiss is considered as a recommendation to the District Court in accordance with 28 U.S.C. § 636(b)(1)(B). *See* Local Civil Rule 72.3(c). For the reasons set forth below, this court ALLOWS Plaintiff's motion to amend her complaint [DE–10], DENIES Plaintiffs motion for judicial notice [DE–29], and RECOMMENDS that the District Court ALLOW Defendants' partial motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted [DE–13].

## I. PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, initiated this action by complaint filed February 2, 2012 in the Superior Court of Franklin County, North Carolina. [DE–1–1]. According to her complaint, Plaintiff seeks damages and equitable relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and the Age Discrimination in Employment Act ("ADEA"). [DE 1–1 at 9]. Plaintiff also purports to assert a claim for intentional infliction of emotional distress ("IIED") under North Carolina tort law. Defendants timely filed a notice of removal on March 1, 2012, prior to Defendants' responsive pleading, under the provisions of 28 U.S.C. § 1331, based on Plaintiff's claims under Title VII, the ADA, the GINA, and the ADEA. [DE–1].

On March 13, 2012, prior to either a responsive pleading or motion under Rule 12(b), (e) or (f), Plaintiff filed a motion to amend her complaint. [DE–10]. Through her motion, Plaintiff seeks to incorporate into her complaint the notice of charge of discrimination she filed against Defendants with the Equal Employment Opportunity Commission ("EEOC"), and the notice of right to sue issued by the EEOC, which Plaintiff failed to attach to her complaint. Plaintiff's motion to amend does not seek to assert new causes of action or add new parties. Defendants have not objected to Plaintiff's motion.

Thereafter, on March 26, 2012, Defendants filed a partial motion to dismiss [DE–13] under Rules 12(b)(1) and 12(b)(6) and an answer [DE–15]. On April 19, 2012, Plaintiff filed a "response" [DE–25] to Defendants' partial motion to dismiss entitled "Plaintiffs' Complience to a Partial Motion to Dismiss [sic]," in which she "requests that the court grant due diligence and partially dismiss the Plaintiffs [sic] claim against all of the Defendants related to the [ADA], the [ADEA] and the [GINA] because the Plaintiff did fail to include these three specific acts of discrimination in the charge she filed with the [EEOC]." Pl.'s Resp. [DE–25 at 1]. Plaintiff also filed an additional "response" [DE–26] to Defendants' partial motion to dismiss. Defendants submitted a reply to these responses on May 7, 2012. Def.'s Reply Brf. [DE–27]. On May 18, 2012, Plaintiff filed a document entitled "Request for Judicial Notice Motion" [DE–29], as well as a "Response to Defendants' Reply Brief Regarding Partial Motion to Dismiss" in which Plaintiff challenges the credibility of Defendants and their counsel. [DE–30].

## II. FACTUAL BACKGROUND

Plaintiff's complaint focuses on her employment as a temporary employee at LipoScience, a diagnostic company located in Raleigh, North Carolina. Plaintiff began working at LipoScience on February 10, 2010, having been placed into her position as a data control specialist at LipoScience

through a temporary employment agency, Innovative Talent Solutions ("ITS"). Compl. [DE–1–1 at 10]. Plaintiff's position was to last approximately six months. *Id.*

Plaintiff's supervisor at LipoScience was Defendant demons. *Id.* According to Plaintiff, the employees who reported to demons did not like her. *Id.* at 11. demons either ignored Plaintiff and other employees or intruded on their conversations, and Plaintiff claimed that she had to "walk[ ] on egg shells" around demons. *Id.* at 11–12. Clemons had Plaintiff perform non-work-related tasks, such as writing demons' boyfriend's resume. *Id.* at 11. Plaintiff further claimed that Clemons watched television on her computer all day and gossiped constantly. *Id.* at 12. Clemons would not speak in the mornings, and would not inform her employees on days that she was not coming in to work. *Id.* However, Plaintiff never complained about Clemons' behavior, as she wished to eventually obtain full-time employment with LipoScience. *Id.*

Plaintiff took leave from her assignment at LipoScience on July 16, 2010 in order to undergo surgery. *Id.* at 12. demons "insisted" Plaintiff return in a few weeks, and that there would be plenty of work for Plaintiff when she returned. *Id.* Prior to returning from her leave, Plaintiff alleges that her doctor wrote her a prescription for Prozac on August 20, 2010, due to her "depression just knowing what I would have to endure when I started work on August 23rd, 2010," and alleges that LipoScience "[was] totally responsible for my mental state." [DE–10–14 at 5–6].

Upon her return to LipoScience, she began volunteering in the laboratory two days a week so that she could reach forty hours of work per week. [DE–1–1 at 13]. Plaintiff alleges that she was disgusted by the profanity and lack of discipline within Clemons' department. *Id.* at 14. For the next few months, Plaintiff applied for almost every position that was posted at LipoScience so that she could leave Clemons' department. *Id.*

Plaintiff alleges further that when she returned to LipoScience on August 23, 2010, Bess, a male co-worker, began to "harass" her. *Id.* at 14. In particular, Plaintiff alleges that Bess asked Plaintiff for a "welcome back hug" and that she hugged him because this was "typical when you do not see someone for a while." *Id.* Plaintiff claims Bess also began "flirting" with her and asking her if she was married. *Id.* Plaintiff told Bess she was married and that she had no interest in him. *Id.* After a visit from Plaintiff's husband to the work place, Bess told Plaintiff to, "tell your husband I am going to take you away from him." *Id.* Additionally, Plaintiff alleges that Bess waited for Plaintiff outside of the women's restroom. *Id.* In one instance, Bess followed Plaintiff to her car and attempted to kiss her. *Id.* Plaintiff alleges Bess also tried to follow Plaintiff into the women's restroom to kiss her. *Id.* at 18. Bess subsequently became even "more aggressive," asking Plaintiff for hugs and attempting to kiss Plaintiff, in response to which Plaintiff always turned her head or pushed him away. *Id.* at 15. Additionally, at the company's Christmas luncheon, Bess gave Plaintiff his telephone number. *Id.*

Plaintiff alleges that Bess's actions "really bothered [her]," that she was "afraid" of running into Bess, and that she got to the point where she would have panic attacks when she encountered Bess. *Id.* at 14–15. Plaintiff also claims she was "devastated" when Bess attempted to follow her into the women's restroom and kiss her. *Id.* at 18.

Meanwhile, Plaintiff spoke to Yvonne Lavallee, a laboratory supervisor at LipoScience, regarding full-time employment in

the laboratory. *Id.* at 16. Clemons confronted Plaintiff about her job discussions with Lavallee and advised Plaintiff that she would offer Plaintiff a job in Clemons' department. *Id.* Plaintiff and Clemons discussed other issues, including Bess's behavior towards Plaintiff. *Id.* Clemons responded "that's just [Bess]" and described an affair that Bess had with another LipoScience employee. *Id.* at 16–17.

After speaking with Clemons, Plaintiff emailed Lavallee, declining the job in the laboratory. *Id.* at 17. Plaintiff subsequently noticed that one of the employees in Clemons' department, Kristi, began treating her negatively. *Id.* Eventually, Plaintiff learned that Clemons had told Kristi about negative comments Plaintiff had made to Clemons about Kristi during a previous conversation. *Id.* at 17–18. Plaintiff alleged that she could not stop crying about the harassment from Bess, Kristi's comments to Plaintiff, and the situation about the laboratory position at LipoScience, and stated that she was "losing her mind." *Id.* at 18–19. Plaintiff contacted her doctor and "briefed her on the situation," and on January 18, 2011, Plaintiff was prescribed Xanax for anxiety. *Id.* at 18; [DE–10–14 at 5]. Plaintiff does not specify whether her anxiety stemmed from Bess's alleged harassment or the issues she was having with Clemons and her coworkers. On February 14, 2011, Plaintiff received a call from ITS informing her that LipoScience was terminating her assignment. *Id.* at 19.

Thereafter, Plaintiff filed a claim of employment discrimination with the EEOC. [DE–10–6]. In her EEOC Intake Questionnaire, Plaintiff indicated "Sex" as the basis for her discrimination claim by checking the box corresponding to "Sex." *Id.* at 3. Plaintiff did not check any of the boxes on the questionnaire designated for discrimination on the basis of disability,

age, or genetic information. *Id.* Additionally, Plaintiff listed sexual harassment as an additional basis for her claim. *Id.* On November 2, 2011, the EEOC issued Plaintiff her notice of suit rights [DE–10–11 at 2].

Based on the foregoing, Plaintiff seeks damages and equitable relief for Defendants' alleged violations of Title VII, the ADA, the ADEA, the GINA, and under state tort law pursuant to her IIED claim.

### III. MOTION TO AMEND COMPLAINT

Plaintiff has moved to amend her complaint to incorporate various documents into her pleading, such as (1) Plaintiffs biographical information [DE–10–1], (2) correspondence with ITS [DE–10–3], as well as Plaintiff's contract agreement with ITS [DE–10–4], (3) Plaintiff's EEOC Intake Questionnaire [DE–10–6], Notice of Charge of Discrimination [DE–10–7], the EEOC Dismissal and Notice of Rights [DE–10–11], and Plaintiffs correspondence with her EEOC Investigator [DE–10–10], and (4) Plaintiff's correspondence with various employees at LipoScience [DE–10–8, DE–10–9]. Plaintiff also seeks to add letters from various individuals attesting to Plaintiff's character dated after the filing of the initial complaint [DE–10–13], as well as an undated "Response to Respondants' Evidence [sic]" [DE–10–14]. Defendants have not responded to Plaintiff's motion to amend.

In accordance with Rule 15 of the Federal Rules of Civil Procedure, a plaintiff is entitled to amend her complaint once as a matter of course before, or within 21 days after, the defendant files a responsive pleading or motion to dismiss under Rule 12(b), (e) or (f). *See* FED.R.CIV.P. 15(a)(1). At the time Plaintiff filed her motion to amend, Defendants had neither filed an answer to Plaintiff's complaint nor filed

their motion to dismiss. Plaintiff's motion to amend is therefore ALLOWED.

## IV. RULE 12(B)(1) MOTION TO DISMISS

The court is mindful of the latitude extended to pleadings of *pro se* litigants. *See White v. White*, 886 F.2d 721, 722–23 (4th Cir.1989). In particular, the court must liberally construe a pleading filed by a *pro se* litigant for the development of a potentially meritorious claim. *Id.* Nonetheless, courts are not required to "conjure up questions never squarely presented to them [and] judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. Accordingly, when a party sets forth a Rule 12(b)(1) defense in addition to other Rule 12 defenses, the court should resolve the 12(b)(1) motion first, because if the court lacks jurisdiction, the remaining motions are moot. *Foxworth v. United States*, No. 3:10–CV–317, 2010 U.S. Dist. LEXIS 106759, at *5, 2010 WL 3938267, at *2 (E.D.Va. Oct. 6, 2010) (citing *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir.2006)).

Here, Defendants argue that Plaintiff's failure to exhaust the EEOC's administrative process with respect to a claim of employment discrimination under the ADA, the ADEA, and the GINA deprives the federal courts of subject matter jurisdiction over those claims. As previously mentioned, Plaintiff's EEOC charge alleges only that she was sexually harassed at LipoScience; there is no allegation of age or disability discrimination or discrimination based on genetic information. *See, e.g., Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir.2005) ("plaintiff's claim

generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex").

However, the court need go no further in its analysis, as Plaintiff herself has requested that the court dismiss her claims against all Defendants arising under the ADA, the ADEA, and GINA. *See* Pl.'s Resp. [DE–25 at 1]. Given that Plaintiff has expressly assented that these claims be dismissed, the court recommends that Defendants' motion to dismiss Plaintiff's complaint with respect to claims purportedly arising under the ADA, ADEA, and GINA against all Defendants be ALLOWED.

## V. RULE 12(B)(6) MOTION TO DISMISS

In light of the above recommended disposition, the remaining issues before the court are (1) whether Plaintiff's claims against the individual Defendants Bess and Clemons under Title VII should be dismissed pursuant to Rule 12(b)(6) because they are not "employers" within the meaning of the statute, and (2) whether Plaintiff has alleged sufficient facts to state a claim for intentional infliction of emotional distress against all Defendants.

### A. Standard of Review

Under Fed.R.Civ.P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Walsh v. Mitchell*, 427 Fed.Appx. 282 (4th Cir.2011).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir.1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

However, the " '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 616 n. 26 (4th Cir.2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955); *Ashcroft v. Iqbal,* 556 U.S. 662, 664, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.,* 213 F.3d 175, 180 (4th Cir.2000).

The standard for evaluating the sufficiency of the pleading in the instant case is particularly flexible because "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 93, 127 S.Ct. 2197 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiffs allegations, however, the court is not required to accept a *pro se* plaintiff's contentions as true, and cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir.1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed").

**B. Plaintiff's Title VII Claims against Defendants Clemons and Bess**

Plaintiff has asserted claims of discrimination arising under Title VII against individual Defendants Clemons and Bess. According to Plaintiff, Clemons was her supervisor and Bess was a coworker at LipoScience. Compl. [DE–1–1 at 10, 11 and 14]. Individuals, however, may not be personally liable under Title VII. *See Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998) ("Supervisors are not liable in their individual capacities under Title VII violations" because an individual supervisor is not the plaintiff's "employer"); *see Ward v. Coastal Carolina Health Care, P.A.,* 597 F.Supp.2d 567, 570 (E.D.N.C.2009) ("[I]ndividual employees of corporate entities . . . are not liable in their individual capac-

ities for Title VII violations because such individuals are not 'employers' under Title VII"). Accordingly, the court recommends that Defendants' motion to dismiss the Title VII claims against Defendants Clemons and Bess be ALLOWED.

## C. Plaintiff's State Law Claim for IIED against Defendants

Plaintiff alleges that she was subjected to intentional infliction of emotional distress by all Defendants. Under North Carolina law, in order to state a claim for IIED a plaintiff must allege sufficient facts which demonstrate "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another." *Pierce v. Atl. Grp., Inc.,* 724 S.E.2d 568, 577 (N.C.Ct.App. 2012). Whether behavior constitutes extreme and outrageous conduct causing severe emotional distress is a question of law for the court. *Foster v. Crandell,* 181 N.C.App. 152, 638 S.E.2d 526, 537 (2007). North Carolina courts have "set a high threshold for a finding that conduct" meets this standard. *Dobson v. Harris,* 134 N.C.App. 573, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds,* 352 N.C. 77, 530 S.E.2d 829 (2000).

In the context of one's employment particularly, North Carolina courts have been reluctant to find actionable intentional infliction of emotional distress claims. *Bratcher v. Pharm. Prod. Dev., Inc.,* 545 F.Supp.2d 533, 544 (E.D.N.C.2008) (citations omitted); *Efird v. Riley,* 342 F.Supp.2d 413, 427 (M.D.N.C.2004) (citations omitted); *Thomas v. Northern Telecom, Inc.,* 157 F.Supp.2d 627, 635 (M.D.N.C.2000) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of [IIED]."). In order to meet the "extreme and outrageous conduct" requirement, Plaintiff must

allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 340 S.E.2d 116, 123 (1986) (internal citations omitted)). The alleged behavior must be more than "mere insults, indignities, threats, . . . and . . . plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan,* 340 S.E.2d at 123 (quoting Restatement (Second) of Torts, § 46 comment (d) (1965)).

In North Carolina, "claims of IIED based upon allegations of sexual harassment generally have included one or more of the following: an unfair power relationship between defendant and plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff, or; defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts." *Guthrie v. Clegg's Termite and Pest Control,* 152 N.C.App. 15, 567 S.E.2d 403, 410 (2002). *See Poole v. Copland, Inc.,* 348 N.C. 260, 498 S.E.2d 602 (1998) (obscene language; sexual advances; defendant unzips pants and grabs his crotch while making vulgar suggestions to plaintiff); *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22 (1992) (obscene references to plaintiff's private parts; vulgarity; harasser was plaintiff's supervisor); *Denning–Boyles v. WCES, Inc.,* 123 N.C.App. 409, 473 S.E.2d 38 (1996) (vulgarity; sexual advances); *Ruff v. Reeves Brothers, Inc.,* 122 N.C.App. 221, 468 S.E.2d 592 (1996) (obscene suggestions; defendants held plaintiff while pulling up her shirt, and, on another occasion, held plaintiff while pulling her legs apart; sexual ad-

vances); *Bryant v. Thalhimer Brothers, Inc.,* 113 N.C.App. 1, 437 S.E.2d 519 (1993), *disc. review denied,* 336 N.C. 71, 445 S.E.2d 29 (1994) (vulgar sexual language; threatening behavior; "rubbed his penis across [plaintiff's] hand"); *Brown v. Burlington Industries, Inc.,* 93 N.C.App. 431, 378 S.E.2d 232 (1989) (sexual advances; genital contact; defendant was plaintiffs supervisor); *Hogan,* 340 S.E.2d at 121 (sexual advances by supervisor; genital contact; vulgar language).

Turning to the contents of the complaint, Plaintiff's allegations regarding Clemons' behavior fail to rise to the level of extreme and outrageous as a matter of law. Plaintiff asserts that Clemons was rude to her and others, gossiped about her with other employees, had Plaintiff perform non-work-related duties, and attempted to interfere with Plaintiff's efforts to obtain a job in the laboratory. These alleged actions do not describe conduct that is outside the bounds tolerated in a decent society and fail to sustain a cause of action for IIED against Defendant demons. *See Hogan,* 340 S.E.2d at 122–23 (affirming summary judgment for employer where employee claimed that her coworker screamed at her, called her names, interfered with the employees under her supervision, and threw a menu at her).

Additionally, the conduct alleged in Plaintiff's complaint regarding the harassment by Bess is not extreme and outrageous as a matter of law. *See Lemay v. Bridgestone Bandag, LLC,* No. 5:11–CV–723–BO, 2012 U.S. Dist. LEXIS 114086, at *8, 2012 WL 3524838, at *3 (E.D.N.C. Aug. 14, 2012). Plaintiff alleges that Bess asked for a "welcome back" hug and that she willingly hugged him because she felt it was natural. Plaintiff alleges further that Bess "flirted" with her, asked her if she was married, told her that he was going to take her away from her husband, waited

for her outside the restroom, followed Plaintiff to her car one day, asked to hug her and attempted to kiss her, gave Plaintiff his phone number, and tried to follow Plaintiff into the restroom. Bess was not Plaintiff's supervisor or workplace superior, he did not swear or employ obscene language, he referred to nothing vulgar, and although he attempted to kiss Plaintiff, he did not express or manifest any other interest in sexual activity with Plaintiff such as physical or sexual touching, which North Carolina courts have focused on when addressing the viability of this tort in the context of one's employment. While the court may find Bess' alleged behavior to be boorish, such conduct does not rise to the high standard of outrageous, extreme, or utterly atrocious behavior so as to satisfy the first element of the tort, requiring a showing of "extreme and outrageous conduct." *See Guthrie,* 567 S.E.2d at 410.

Even if the court were to conclude that Bess' alleged behavior was extreme and outrageous, Plaintiff's claim fails nonetheless because Plaintiff has failed to allege that she suffered severe emotional distress attributable to Bess. Although an actual diagnosis by a medical professional is not always required or necessary in order to support a claim of IIED, " 'mere temporary fright, disappointment, or regret will not suffice' to satisfy the element of severe emotional distress." *Estate of Hendrickson v. Genesis Health Venture, Inc.,* 151 N.C.App. 139, 565 S.E.2d 254, 265 (2002) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283, 395 S.E.2d 85, 97 (1990)). To show severe emotional distress, a plaintiff "must do more than simply state that he has suffered severe emotional distress; there must be evidence that he has suffered from an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of

severe and disabling emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so." *May v. City of Durham,* 136 N.C.App. 578, 525 S.E.2d 223, 230 (2000) (internal quotations omitted). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. J (1965).

Plaintiff alleged that she would have "panic attacks" when she saw Bess [DE 1–1 at 15] and that she was "devastated" when Bess attempted to follow her into the restroom. *Id.,* at 18. Plaintiff noted that Bess's action "really bothered [her]," and that she was "afraid" of running into Bess. *Id.* at 14–15. However, "these feelings of 'fear, embarrassment, and humiliation' are insufficient, standing alone, to allege that [her] emotional distress was severe." *See Lemay,* 2012 U.S. Dist. LEXIS 114086, at *8, 2012 WL 3524838, at *3 (citing *Kaplan v. Prolife Action League of Greensboro,* 111 N.C.App. 1, 431 S.E.2d 828, 838 (1993)).

Plaintiff alleges that her doctor wrote her a prescription for Prozac. However, this allegedly occurred in August of 2010, before the alleged harassment by Bess began. [DE–10–14 at 5]. Plaintiff also alleges that her doctor wrote her a prescription for Xanax for anxiety in January of 2011 after Plaintiff "brief[ed] her [doctor] on the situation" [DE–1–1 at 18]; however, it is unclear whether Plaintiff's anxiety stemmed specifically from the alleged harassment by Bess or the issues she was having with Clemons and her other co-workers. Moreover, Plaintiff fails to allege that she was ever diagnosed with a chronic mental or emotional disorder, that

she was ever hospitalized, or that Plaintiff was otherwise debilitated as a result of Bess' alleged behavior. In spite of Plaintiff's reaction to Bess' behavior, "[a]bsent an allegation that [Plaintiff] suffered an emotional or mental disorder that was *severe or disabling,* [her] claim must be dismissed." *See Lemay,* 2012 U.S. Dist. LEXIS 114086, at *9, 2012 WL 3524838, at *3 (citing *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22, 27–28 (1992)).

In light of the court's recommendation allowing Defendants' motion to dismiss the IIED claims against Clemons and Bess, the court further recommends allowing Defendants' motion to dismiss with regards to their employer LipoScience. *See Guthrie,* 567 S.E.2d at 410 (holding that "having concluded that defendant [individual] did not engage in the alleged tortious behavior, we necessarily conclude that plaintiff has no claim against defendant [employer]"). Accordingly, the court recommends that Defendants' motion to dismiss Plaintiff's IIED claim against all Defendants be ALLOWED.

## VI. MOTION FOR JUDICIAL NOTICE

Plaintiff filed a motion requesting that the court take judicial notice and "adjudicate the facts presented by the Plaintiff which will challenge the credibility of [defense counsel] and the Defendants." [DE–29 at 1]. In particular, Plaintiff asserts that Defendants and their counsel behaved improperly by drawing the court's attention to the fact that Plaintiff's original complaint did not have any of the exhibits referenced therein attached, such as Plaintiff's EEOC charge or the EEOC dismissal and notice of rights.[1] Plaintiff asks the court to sanction Defendants and their

---

1. As discussed above, by granting Plaintiff's motion to amend, this perceived deficiency will be cured.

counsel. Defendants, however, have not disputed that Plaintiff filed an EEOC charge. The dispute appears to have arisen as a result of documents missing from the state court case file which were not included in the documents filed in this court upon removal. *See* Defs.' Reply Brf. at 4–5; Decl. of Lisa Ostrander [DE–27–1]. Defendants' explanation as to the circumstances in obtaining copies of the case file from state court prior to removal assures this court of no improper behavior. Moreover, this court has allowed Plaintiff's motion to amend her complaint, permitting Plaintiff to incorporate her exhibits into her pleadings. Accordingly, Plaintiff's motion [DE–29] is DENIED.

## VII. CONCLUSION

For the reasons stated above, this court ALLOWS Plaintiff's Motion to Amend Complaint [DE–10] and DENIES Plaintiff's Motion for Judicial Notice [DE–29], and RECOMMENDS that Defendants' Partial Motion to Dismiss [DE–13] be ALLOWED.

The Clerk shall send copies of the Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

So ordered and submitted the 6th day of September, 2012.